# IN THE SUPREME COURT OF CALIFORNIA

ALAN HEIMLICH,

Plaintiff and Respondent,

v.

SHIRAZ M. SHIVJI,

Defendant and Appellant.

S243029

Sixth Appellate District
H042641

Santa Clara County Superior Court
112CV231939

May 30, 2019

Justice Corrigan authored the opinion of the court, in which Chief Justice Cantil-Sakauye and Justices Chin, Liu, Cuéllar, Kruger, and Groban concurred.

HEIMLICH v. SHIVJI

S243029

Opinion of the Court by Corrigan, J.

Code of Civil Procedure section 998[1] creates an incentive for settlement. It authorizes an award of costs to a party that makes a pretrial settlement offer when the opponent rejects the offer and obtains a lesser result at trial. (*Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1019.) In 1997, the Legislature amended the statute to make the same incentive available in arbitrations. (Stats. 1997, ch. 892, § 1, p. 6390; *Pilimai v. Farmers Ins. Exchange Co.* (2006) 39 Cal.4th 133, 139, 149.) This case involves the procedures for seeking these costs in arbitration.

We hold a request for costs under section 998 is timely if filed with the arbitrator within 15 days of a final award. In response to such a request, an arbitrator has authority to award costs to the offering party. However, if an arbitrator refuses to award costs, judicial review is limited. The Court of Appeal erred in relying on a narrow exception to those limits, for failure to consider evidence. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2003, engineer and inventor Shiraz Shivji retained Attorney Alan Heimlich to handle a range of intellectual property matters. The representation agreement included a

---

[1] All further unlabeled statutory references are to the Code of Civil Procedure.

clause providing for private arbitration of all disputes, including those involving legal fees. Heimlich represented Shivji in connection with patent applications and formation of a start-up company.

In 2012, Heimlich sued Shivji, alleging he owed roughly $125,000 in legal fees. One year into the litigation, Shivji made an offer to settle the case under section 998 (998 offer) for $30,001. The offer was not accepted. In November 2013, with proceedings ongoing, Shivji filed a demand for arbitration with the American Arbitration Association. Heimlich requested dismissal, urging that Shivji had waived his arbitration rights. The arbitrator denied the request pending a judicial determination of the waiver question. The court granted Shivji's motion to compel arbitration and stayed further litigation.

Shivji and Heimlich then filed claims against each other. Shivji asked for a refund of $176,000 for sums already paid. Heimlich sought $125,000 for unpaid fees. Each party also requested costs, placing that issue squarely before the arbitrator. On March 5, 2015, the arbitrator issued an award granting $0 to both Heimlich and Shivji and directed that "each side will bear their own attorneys' fees and costs." (Capitalization altered.) The award was "intended to be a complete disposition of all claims and counterclaims submitted to this Arbitration."

On March 11, 2015, Shivji advised the arbitrator of the original 998 offer and a second one for $65,001. Shivji sought costs because Heimlich had failed to obtain a more favorable result. He assumed "the demand for an award for recovery of these costs should be submitted to the Arbitrator rather than directly to the Court." The arbitrator replied by email:

"Counsel, once I issued [my] Final Award I no longer [had] jurisdiction to take any further action in this matter. As discussed in the Award, whatever may have been costs, fees, etc. associated with the [court] litigation were to be borne by the parties and I didn't award either party attorneys' fees related to the arbitration."

Shivji then filed a trial court motion to confirm the award and attached a memorandum of costs seeking $76,684.02. The court confirmed the award but refused to add costs. It relied on *Maaso v. Signer* (2012) 203 Cal.App.4th 362, which held a request for section 998 costs in connection with an arbitration must be resolved by the arbitrator.

The Court of Appeal reversed, holding Shivji's postaward request to the arbitrator was timely. It observed that a "section 998 determination necessarily must postdate an arbitration award," and that a 998 offer " 'cannot be given in evidence upon the trial or arbitration.' " (*Heimlich v. Shivji* (2017) 12 Cal.App.5th 152, 169, review granted Aug. 23, 2017, S243029, quoting § 998, subd. (b)(2), italics omitted.) Moreover, it held the trial court could vacate the arbitrator's award because the arbitrator had " 'refus[ed] . . . to hear evidence material to the controversy' " (*Heimlich*, at p. 175, quoting § 1286.2, subd. (a)(5)) when he summarily rejected Shivji's attempt to raise the issue (*Heimlich*, at pp. 175–177).

## II. DISCUSSION

### A. *The Allocation of Costs Was an Issue for the Arbitrator in the First Instance*

Arbitration is a matter of consent. (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 252.) Consequently,

whether an arbitrator or court should allocate costs depends on the parties' agreement, which defines the scope of the arbitrator's power. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 8.)

Here, that agreement is broad. It commits the parties to arbitrate "all disputes or claims of any nature whatsoever, including but not limited to those relating to [Heimlich's] fees or the adequacy or appropriateness of [Heimlich's] services . . . ." (Capitalization altered.) While the agreement does not explicitly address jurisdiction over ancillary matters such as costs, neither does it exclude them from consideration. "Absent an express and unambiguous limitation in the contract or the submission to arbitration, an arbitrator has the authority to find the facts, interpret the contract, and award any relief rationally related to his or her factual findings and contractual interpretation." (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1182.) This principle extends specifically to costs: If the parties' agreement does "not limit the issues to be resolved through arbitration, the issue of [a party's] entitlement to . . . costs, as requested in his complaint, [is] subject to determination in arbitration proceedings." (*Corona v. Amherst Partners* (2003) 107 Cal.App.4th 701, 706; see *Moshonov v. Walsh* (2000) 22 Cal.4th 771, 776; *Maaso v. Signer, supra,* 203 Cal.App.4th at p. 377.)

As a result, Shivji was required to request costs from the arbitrator in the first instance. Failure to do so would have precluded relief. (See *Maaso v. Signer, supra,* 203 Cal.App.4th at pp. 377–378; *Corona v. Amherst Partners, supra,* 107 Cal.App.4th at pp. 706–707.) Shivji's request for costs in his arbitration claim and his March 11 attempt to raise the issue

with the arbitrator were sufficient to avoid this bar. The next question is timeliness.

B. *Evidence of a Section 998 Offer May Be Presented Before or After a Final Arbitration Award*

Section 1032 provides: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (§ 1032, subd. (b).) Section 998 amends this rule, creating an additional avenue for cost recovery. A party that might not otherwise qualify as prevailing may still be entitled to costs because it extended a formal pretrial or prearbitration settlement offer that was declined and a better outcome ensued. (See § 998, subds. (c)–(e).) "It is the very essence of section 998 that, to encourage both the making and the acceptance of reasonable settlement offers, a losing defendant whose settlement offer exceeds the judgment is treated for purposes of postoffer costs *as if* it were the prevailing party." (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1114.) A plaintiff who rejects a defendant's 998 offer, then fails to obtain a more favorable judgment, cannot recover postoffer costs. That plaintiff is also liable for the defendant's postoffer costs, and in the discretion of the court, for expert witness fees as well. (§ 998, subd. (c)(1).)

A 998 offer must be made at least 10 days before the beginning of trial or arbitration. (§ 998, subd. (b).) If the offer is declined or not accepted in time, "it shall be deemed withdrawn, and cannot be given in evidence upon the trial or

arbitration." (*Id.*, subd. (b)(2).)[2] Shivji contends this restriction on admissibility prevented him from seeking costs until after the arbitrator issued an award because he was barred until then from telling the arbitrator about his settlement offers. Heimlich argues that under *White v. Western Title Ins. Co.* (1985) 40 Cal.3d 870, there is no evidentiary bar. To the contrary, he urges preaward submission is mandatory because the arbitrator loses all jurisdiction after an award.

Both views are incorrect. With certain limits, evidence of a 998 offer may be presented before *or* after an arbitrator's final award on the merits. While Shivji would not have been categorically prohibited from advising the arbitrator of the rejected 998 offer sooner, his proffer six days after the final award was timely.

1.      *Notice of a Section 998 Offer Before an Award*

In *White v. Western Title Ins. Co.*, *supra*, 40 Cal.3d 870, plaintiffs sued a title insurance company for breach of contract and negligence. The insurer made a series of settlement offers, including one pursuant to section 998. The insureds rejected all offers and added a claim for breach of the covenant of good faith and fair dealing. The court bifurcated proceedings, trying the contract and negligence claims first. After the insurer was found liable, trial proceeded on the good faith claim. To prove the insurer handled the underlying insurance claim in bad faith, the insureds introduced evidence of the settlement offers. (*White*, at pp. 878–879.)

---

[2]      These offers expire after 30 days or at the start of trial or arbitration, whichever comes first. (§ 998, subd. (b)(2).) There is no dispute Shivji's offers were never accepted.

On appeal, we rejected Western Title's argument that its settlement offers were inadmissible. The policy behind the Evidence Code's general prohibition against introduction of settlement offers (see Evid. Code, § 1152) is that candor is essential to productive settlement negotiations (*C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 13). Parties should be encouraged to make offers without fear that they will be treated as an admission of either liability or the minimal value of a claim. However, Western Title's offers were not being used to show contractual liability. Because that question had already been adjudicated in the first part of the bifurcated proceeding, the offers could be admitted for a different purpose: to show the insurer's bad faith. (*White v. Western Title Ins. Co.*, *supra*, 40 Cal.3d at pp. 887–888.)

*White* acknowledged that Code of Civil Procedure section 998, subdivision (b)(2), imposes a specific and arguably broader bar against admissibility. While the Evidence Code bars admission of a settlement offer specifically "to prove [a party's] liability for . . . loss or damage" (Evid. Code, § 1152, subd. (a)), the Code of Civil Procedure states without any limitation that a declined 998 offer "cannot be given in evidence" (Code Civ. Proc., § 998, subd. (b)(2)). Nonetheless, we concluded that provision should be read to implement the same policies as those underlying the Evidence Code bar, and thus be subject to similar limitations, notwithstanding its absolute terms. Accordingly, although a 998 offer is inadmissible to prove liability, it may be admissible to prove unrelated matters. (*White v. Western Title Ins. Co.*, *supra*, 40 Cal.3d at p. 889.)

*White* limits the force of section 998's broad language by conforming the scope of its evidentiary bar to circumstances implicating the policy underlying the prohibition. The Court of

Appeal erred in concluding, without discussion of *White*, that section 998, subdivision (b)(2), prevented Shivji from revealing the offer.  (See *Heimlich v. Shivji, supra*, 12 Cal.App.5th at p. 169, rev. granted.)

2.    *Notice of a Section 998 Offer After an Award*

Just because Shivji could have raised the rejected 998 offer sooner does not mean that he was required to do so.  The text of section 998 and the rules governing arbitration do not mandate that a rejected offer be presented to an arbitrator before issuance of an award.  Furthermore, the policy underlying section 998 militates in favor of permitting disclosure after issuance.

Section 998 sets out when a settlement offer may be made and by when it must be accepted.  (§ 998, subd. (b).)  It does not address when a request for costs must be made.  In court cases, that timing is governed by California Rules of Court, rule 3.1700.  A party seeking costs must file a memorandum within 15 days of notice of entry of judgment, or 180 days of entry of judgment in the absence of a notice.  (Cal. Rules of Court, rule 3.1700(a)(1); see *Kahn v. The Dewey Group* (2015) 240 Cal.App.4th 227, 234–237.)  This postjudgment window allows a party to wait until after a decision on the merits to reveal a 998 offer.

When the Legislature amended section 998 to extend its application to private arbitrations, it did not specify a different timeline for seeking costs.  (Stats. 1997, ch. 892, § 1, pp. 6389–

6391.)[3]  Had the Legislature sought to impose more stringent time limits, it was free to say so.  But neither the statutory text nor any relevant legislative history reflects an intent to deviate from settled court practice and require different timing.

The policies underlying Code of Civil Procedure section 998 strengthen the inference that the Legislature did not intend to require pre-decision introduction of settlement offers.  As discussed, section 998 and its limits on settlement offer admissibility were drafted to promote the same pro-settlement policies as Evidence Code section 1152.  (*White v. Western Title Ins. Co., supra*, 40 Cal.3d at p. 889; see *Bank of San Pedro v. Superior Court* (1992) 3 Cal.4th 797, 804.)  The statutes recognize that if a court or jury is informed of a settlement offer before determining liability, the offering party may be prejudiced in its ability to obtain any outcome better than that which it had previously expressed a willingness to accept.  (See *Stockman v. Oakcrest Dental Ctr., P.C.* (6th Cir. 2007) 480 F.3d 791, 800 ["The prejudice that inheres in [knowledge of] offers to settle is patently virulent"].)  That reality could chill the making of reasonable offers and undermine the policy favoring settlement.  Accordingly, the statutes insulate parties from this potential prejudice by limiting admissibility.  (Evid. Code, § 1152, subd. (a); Code Civ. Proc., § 998, subd. (b)(2).)

When the Legislature amended section 998 to encompass arbitrations, it sought to place parties in arbitration on equal footing with parties to civil actions.  (See Sen. Com. on Judiciary, Analysis of Sen. Bill No. 73 (1997–1998 Reg. Sess.) as amended

---

[3]  The timeline for recovering costs in court was the same in 1997 as it is today.  (See Cal. Rules of Court, former rule 870(a)(1).)

May 1, 1997, p. 7; *Pilimai v. Farmers Ins. Exchange Co.*, *supra*, 39 Cal.4th at pp. 150–151.) By extending the general rule against admissibility to arbitrations (§ 998, subd. (b)(2)), the Legislature expressed its view that arbitrators, no less than juries and judges, may be influenced if aware of settlement offers. To require parties in an arbitration to disclose settlement offers before an award is made would contradict the goal of equal treatment.

There was no risk of prejudice in *White v. Western Title Ins. Co.*, *supra*, 40 Cal.3d 870, because the jury had already determined the insurer's liability for contract damages. The same is not true for disclosure of a settlement offer before an arbitrator's decision on the merits. Requiring a defendant to advise an arbitrator it has offered to settle, even if no amounts are mentioned, could influence a merits determination by signaling that the defendant is willing to pay at least some amount. Heimlich argues that a party could alert the arbitrator to the existence of an offer without disclosing the amount *or* who made it. But as Shivji rightly notes, a decision maker alerted to an offer may likely assume the alert comes from the party with an incentive to mention it: the party whose offer was rejected.

Against these considerations, Heimlich asserts that allowing a 998 offer to be raised after a final award would destroy the finality of arbitration awards. At common law, the issuance of an arbitration award was treated as *functus officio*, an act that terminates the actor's authority. (See *Moshonov v. Walsh*, *supra*, 22 Cal.4th at p. 780, fn. 1 (conc. opn. of Kennard, J.).) "It is, apparently, an ancient rule that 'when arbitrators have published their award by delivering it to the parties as the award, that it is not the subject of revision or correction by them, and that any alteration without the consent of the parties will

vitiate it.' " (*Elliott & Ten Eyck Partnership v. City of Long Beach* (1997) 57 Cal.App.4th 495, 501, quoting *Porter v. Scott* (1857) 7 Cal. 312, 316.) "Arbitrators exhaust their power when they make a final determination on the matters submitted to them. They have no power after having made an award to alter it; the authority conferred on them is then at an end." (*Bayne v. Morris* (1863) 68 U.S. 97, 99; see *Doke v. James* (1851) 4 N.Y. 568, 575–576.) From this, Heimlich reasons, notice of a settlement offer must necessarily be given before the final award, when the arbitrator still has the power to act.

But the rule that issuance of a final award terminates an arbitrator's power is not so rigid.[4] "*Functus officio*" renders an actor "without further authority or legal competence because the duties and functions of the original commission have been fully accomplished." (Black's Law Dict. (10th ed. 2014) p. 787, col. 2.) The doctrine applies only after the arbitrator's assigned duties have ended. Further, common law rules are subject to legislative revision. (*McMillin Albany LLC v. Superior Court* (2018) 4 Cal.5th 241, 249.) The Legislature may confer authority to correct or amend a final decision or make additional rulings contingent upon, and necessarily subsequent to, a final award. A change in the scope of an arbitrator's duties will affect when those duties have been completed and the arbitrator's powers extinguished.

The California Arbitration Act (§§ 1280–1294.2; the Arbitration Act) governs private arbitration. Section 1284 expressly vests arbitrators with continuing jurisdiction for a

---

[4]     As one sister court has noted, the rule, "riddled with exceptions, . . . is hanging on by its fingernails." (*Glass, Molders v. Excelsior Foundry Co.* (7th Cir. 1995) 56 F.3d 844, 846.)

brief period following a final award: "The arbitrators, upon written application of a party to the arbitration, may correct the award upon any of the grounds set forth in subdivisions (a) and (c) of Section 1286.6 not later than 30 days after service of a signed copy of the award on the applicant. [¶] Application for such correction shall be made not later than 10 days after service of a signed copy of the award on the applicant." Section 1288.4 protects this arbitral jurisdiction; it bars parties from filing petitions in superior court to vacate or confirm an award "until at least 10 days after service of the signed copy of the award on the petitioner." These provisions ensure that an arbitrator retains jurisdiction to modify an award for at least 10 and as many as 30 days after its filing and service. (See *Cooper v. Lavely & Singer Professional Corp.* (2014) 230 Cal.App.4th 1, 18.) If no application for correction is filed within 10 days, jurisdiction expires and a petition to vacate or confirm may be filed in superior court. If an application is filed, the arbitrator retains jurisdiction for up to 30 days after the award was filed. (§ 1284.)

To be sure, the grounds for correction of an award are narrow (see § 1286.6) and are not implicated here. But the principle the Arbitration Act illustrates is that issuance of an award does not immediately and automatically terminate an arbitrator's powers. Instead, the Legislature can, and has, authorized continuing jurisdiction even after issuance of a final award.

The Arbitration Act also provides implicit authority for ongoing jurisdiction. Section 1283.4 requires that an award "include a determination of *all* the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy." (Italics added.) In light of this

duty, courts have inferred that when a putatively final arbitration award omits resolution of an issue necessary to decide the parties' controversy, the arbitrator retains power to amend the award to address the undecided issue. (*Delaney v. Dahl* (2002) 99 Cal.App.4th 647, 657–658; *Century City Medical Plaza v. Sperling, Isaacs & Eisenberg* (2001) 86 Cal.App.4th 865, 879–882 (*Century City*); *A.M. Classic Construction, Inc. v. Tri-Build Development Co.* (1999) 70 Cal.App.4th 1470, 1475–1478.) This retention of authority stems from the statutory obligation to decide all issues within the scope of the arbitrator's assignment. It flows as well from the policy underlying that duty: "[T]he fundamental purpose of contractual arbitration is to finally resolve *all* of the issues submitted by the parties as expeditiously as possible [citation], without the time and expense burdens associated with formal judicial litigation." (*Century City*, at p. 882).[5]

For example, in *Century City, supra,* 86 Cal.App.4th 865, the arbitrator issued an award in a landlord-tenant dispute. The landlord promptly contacted the arbitrator, seeking to have the award amended to include prejudgment interest, costs, and contractual attorney fees. The landlord reasoned that because fees were to be awarded to the prevailing party following entry of judgment, it "was required to await the award before making a motion for attorney fees." (*Id.* at p. 872.) The arbitrator by letter agreed to make an award and directed the landlord to

---

[5] These cases can be interpreted as recognizing a legislative modification of the *functus officio* doctrine or, alternatively, as recognizing that the doctrine only comes into play once an arbitrator's duties have been fully discharged and is inapplicable if the arbitrator has failed to resolve an issue necessary to fully resolve the dispute.

submit a motion for fees and costs under Civil Code section 1717. The arbitrator then issued an amended award that included amounts for interest, costs, and fees. (*Century City*, at pp. 872–873.) The trial court refused to confirm the amended award, but the Court of Appeal reversed, explaining that while arbitrators generally are without power to correct errors of fact or law in rulings they made, they retain power to rule on issues submitted to them but left undecided. (*Id.* at pp. 877–881.)

*Century City* and other amendment cases rest on the understanding that an arbitrator's authority does not expire at the moment an award is issued, even when the award was intended as final. The Legislature has imposed a duty to determine all questions necessary to resolve the parties' dispute (§ 1283.4) and has enacted "no statutory provisions precluding issuance of an *amended* award." (*A.M. Classic Construction, Inc. v. Tri-Build Development Co., supra*, 70 Cal.App.4th at p. 1477.) Arbitrators can, and do, revisit final awards to ensure aspects of the parties' controversy not addressed in those awards are resolved. Indeed, "[f]ailure to find on all issues submitted is . . . a statutory ground for vacating an award." (*Banks v. Milwaukee Ins. Co.* (1966) 247 Cal.App.2d 34, 38.)[6]

The Arbitration Act is not the only legislative source of arbitral power. *Pilimai v. Farmers Ins. Exchange Co., supra*, 39

---

[6] In contrast, arbitrators are constrained by the legislative limits on arbitral correction of awards from revisiting final awards to alter their decisions on matters actually addressed in those awards. (§ 1284; *Cooper v. Lavely & Singer Professional Corp., supra*, 230 Cal.App.4th at pp. 12–19; *Severtson v. Williams Construction Co.* (1985) 173 Cal.App.3d 86, 93–96; *Banks v. Milwaukee Ins. Co., supra*, 247 Cal.App.2d at pp. 36–37.)

Cal.4th 133, held parties to an uninsured motorist arbitration (see Ins. Code, § 11580.2) could recover deposition and exhibit preparation costs. Even though the Arbitration Act did not authorize these costs, "Code of Civil Procedure section 998 itself provides the statutory authorization." (*Pilimai*, at p. 150.) *Pilimai* recognized that section 998 can act as supplemental legislative authorization for an arbitrator's action, in addition to authority provided in the Arbitration Act itself.

A harmonization of section 998, the Arbitration Act, and the applicable Rules of Court leads to the following conclusions. Cost applications in court are filed after a judgment, generally within 15 days. (Cal. Rules of Court, rule 3.1700(a)(1).) Cost applications in a case governed by section 998 likewise must come after a judgment or award. Only then can the outcome be compared with the terms of the settlement offer and deemed more or less favorable. Section 998 is intended to place parties to arbitration and court proceedings on equal footing and should be read to grant arbitration parties the same shield against premature disclosure of settlement offers that parties in court enjoy. Arbitrators have limited continuing jurisdiction after issuance of a final award, and the Legislature by statute can expand an arbitrator's powers. The rule most consistent with these principles is this: Consistent with practice in civil litigation, for 15 days after issuance of a final award, a party to an arbitration may submit a cost request asserting rejection of an earlier 998 offer. The arbitrator has implicit power under section 998 to consider the request and amend any award accordingly. To deem any postaward application untimely would ignore the parity between arbitrations and court cases that section 998 sought to ensure; the policy against early disclosure of settlement offers reflected in section 998,

subdivision (b)(2); and the Legislature's power to grant arbitrators supplemental but limited authority to act even after a final award.

Contrary to Heimlich's argument, the American Arbitration Association's commercial rules do not conflict with the procedures we derive from the statutory scheme. Rule R-47 describes the range of dispositions an arbitrator may issue: "In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards." (American Arbitration Assn., Commercial Arbitration Rules and Mediation Procedures (2013) rule R-47(a).) Neither rule R-47 nor rule R-7, which expressly governs the arbitrator's jurisdiction, provides that the issuance of a final award terminates that jurisdiction. (See *id.*, rules R-7, R-47.) To the contrary, rule R-50 preserves postaward arbitral jurisdiction to consider requests for correction filed within 20 days. (*Id.*, rule R-50.) Under rule R-50, "[t]he arbitrator is not empowered to redetermine the merits of any claim already decided" (*ibid.*), but the rule does not preclude decisions on undecided claims. Rule R-47 also confers authority to "grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties . . . ." (*id.*, rule R-47(a)). Nothing in these provisions forecloses an arbitrator from deciding whether to award costs under section 998 after all underlying claims have been resolved.

Heimlich relies principally on *Maaso v. Signer, supra*, 203 Cal.App.4th 362. But *Maaso* does not require submission of an offer's details before a final award. There, the party that made a rejected 998 offer so advised the arbitrators before issuance of a final award. Even so, the arbitrators made no cost award to the offeror, instead directing that each side bear its pro rata

share of costs.  (*Id.* at p. 377.)  The party claiming costs sought to confirm the arbitration award in court but asked the court to "add costs and interest not awarded by the panel, and which were in fact inconsistent with the panel's award." (*Id.* at p. 378.) The Court of Appeal rejected this approach, explaining that the prevailing party was at fault for never "stat[ing] the amount or seek[ing] to present evidence on the issue" to the arbitrators. (*Id.* at p. 377.)  The prevailing party thus lost because (1) he made an inadequate presentation to the arbitrators, who had jurisdiction to confer costs; (2) the arbitrators issued an award that did not provide for section 998 cost shifting; and (3) even if that omission was legal error, it was not one that could be cured by the courts in the guise of confirming the arbitration award. (*Maaso*, at pp. 377–380.)  *Maaso* did not hold that section 998 cost requests must be presented before issuance of an award on the merits.[7]

Here, Shivji raised the issue six days after the arbitrator's award.  His request for costs was timely.[8]

---

[7]    Although *Maaso* did not expressly require preaward submission, Heimlich quotes from a treatise stating that *Maaso* imposes that requirement.  (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2015) ¶ 5:402.14 ["The arbitrator must be informed, however, of the rejected . . . § 998 offer prior to making a final award in order to impose any applicable costs 'penalties' "].)  The gloss from a treatise cannot change the actual holding of a case.  (See *Cooper v. Lavely & Singer Professional Corp.*, *supra*, 230 Cal.App.4th at p. 18, fn. 7 [rejecting reliance on the Knight treatise on similar grounds].)

[8]    Parties may also agree to jointly tell an arbitrator, before any award is announced, that a 998 offer was made and rejected,

### C. *The Arbitrator's Denial of Costs Cannot Be Vacated*

The conclusion that Shivji's request was timely does not automatically entitle him to judicial relief. "Typically, those who enter into arbitration agreements expect that their dispute will be resolved without necessity for any contact with the courts." (*Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 402, fn. 5.) A court's power to correct or vacate an erroneous arbitration award is closely circumscribed. (*Moshonov v. Walsh*, *supra*, 22 Cal.4th at pp. 775–776; *Moncharsh v. Heily & Blase*, *supra*, 3 Cal.4th at pp. 8–13 (*Moncharsh*).) Shivji has not shown a basis for correcting the arbitrator's error.

Most legal errors in arbitration are not reviewable. (*Moshonov v. Walsh*, *supra*, 22 Cal.4th at p. 775; *Moncharsh*, *supra*, 3 Cal.4th at pp. 11, 33.)[9] An award may be vacated only for fraud, corruption, misconduct, an undisclosed conflict, or similar "circumstances involving serious problems with the award itself, or with the fairness of the arbitration process." (*Moncharsh*, at p. 12; see § 1286.2, subd. (a).) Otherwise, judicial corrections are limited to remedying "obvious and easily correctable mistake[s]," "technical problem[s]," and actions in excess of authority so long as the correction leaves the merits of

_____

without identifying the terms or who made the offer. Such notice would permit the arbitrator to designate an otherwise final award as interim and then consider the parties' presentations concerning costs and fees. But a stipulation is not required, and in its absence Shivji was not untimely in advising the arbitrator when he did.

[9] Parties can expand judicial review of arbitration awards to reach ordinary errors of law (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1339–1340), but no such agreement was entered here.

the decision unaffected. (*Moncharsh*, at p. 13; see § 1286.6.) "[B]y voluntarily submitting to arbitration, the parties have agreed to bear the risk [of uncorrectable legal or factual error] in return for a quick, inexpensive, and conclusive resolution to their dispute." (*Moncharsh*, at p. 11.)

Here, the arbitrator refused to consider Shivji's request for costs. On its face, the arbitrator's response shows he believed he lacked jurisdiction to consider Shivji's request. While this conclusion was incorrect as explained above, ordinary errors in ruling on costs are not subject to correction, nor do they serve as a basis for vacating an award. An arbitrator's legal or factual error in determining which party prevailed may not be reversed. (*Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 24–26; *Creative Plastering, Inc. v. Hedley Builders, Inc.* (1993) 19 Cal.App.4th 1662, 1666.) Error in failing to identify any prevailing party, even upon request, is likewise unreviewable. (*Moore v. First Bank of San Luis Obispo* (2000) 22 Cal.4th 782, 788.) Most specifically, error in failing to award costs to a qualifying party under section 998 is not grounds for relief. (*Maaso v. Signer*, *supra*, 203 Cal.App.4th at pp. 377–380; *Woodard v. Southern Cal. Permanente Medical Group* (1985) 171 Cal.App.3d 656, 661–662.)

Shivji relies on cases holding that arbitrators have the power to amend their decisions to add cost and fee awards. (See *Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 159–160; *Britz, Inc. v. Alfa-Laval Food & Dairy Co.* (1995) 34 Cal.App.4th 1085, 1105–1106.) But if an arbitrator elects *not* to amend a decision in order to add costs or fees, these cases do not hold that a court may overrule that refusal.

Alternatively, Shivji contends, and the Court of Appeal held, that the award here could be vacated because "[t]he rights of [a] party were substantially prejudiced . . . by the refusal of the arbitrators to hear evidence material to the controversy . . . ." (§ 1286.2, subd. (a)(5); see *Heimlich v. Shivji*, *supra*, 12 Cal.App.5th at pp. 175-177, rev. granted.) This analysis fails.

The exceptions to the limits on review of awards protect against error that is so egregious as to constitute misconduct or so profound as to render the process unfair.[10] The Legislature has authorized "judicial review in circumstances involving *serious problems* with the award itself, or with the fairness of the arbitration process." (*Moncharsh*, *supra*, 3 Cal.4th at p. 12, italics added.) " 'The statutory provisions for [review of an arbitration award] are manifestly for the sole purpose of preventing the misuse of the proceeding, where corruption, fraud, misconduct, gross error, or mistake has been carried into the award to the substantial prejudice of a party to the proceeding.' " (*Pacific Vegetable Oil Corp. v. C. S. T., Ltd.* (1946) 29 Cal.2d 228, 240.)

It follows that vacation of an award for "refusal . . . to hear evidence material to the controversy" (§ 1286.2, subd. (a)(5)) must rest on more than a simple error in applying the rules of evidence. As *Schlessinger v. Rosenfeld, Meyer & Susman* (1995) 40 Cal.App.4th 1096, 1110, noted, section 1286.2 subdivision (a)(5), "if not properly limited, could swallow the rule that

---

[10] See, e.g., section 1286.2, subdivision (a)(1) ("corruption, fraud, or other undue means"), (2) ("corruption"), (3) ("misconduct"), (4) (action in excess of powers), (6) (failure to disclose ground for disqualification or to disqualify when required to do so).

arbitration awards are generally not reviewable on the merits." The provision is not "a back door to *Moncharsh* through which parties may routinely test the validity of legal theories of arbitrators." (*Hall v. Superior Court* (1993) 18 Cal.App.4th 427, 438–439.) Instead, it was designed as a "safety valve in private arbitration that permits a court to intercede when an arbitrator has prevented a party from fairly presenting its case." (*Id.* at p. 439.) It comes into play, for example, when an arbitrator, without justification, permits only one side to present evidence on a disputed material issue. (See *Moncharsh*, *supra*, 3 Cal.4th at p. 13.) The Arbitration Act codifies "the fundamental principle that '[a]rbitration should give both parties an opportunity to be heard.' [Citation.] . . . [T]he opportunity to be heard must be extended to all parties equitably." (*Royal Alliance Associates, Inc. v. Liebhaber* (2016) 2 Cal.App.5th 1092, 1108.) To conduct an arbitration without abiding by that principle evinces bias, constituting misconduct.

*Royal Alliance Associates, Inc.* is the paradigmatic example of when a refusal to hear evidence will justify vacation of an award. A financial services client alleged a securities broker sold her unsuitable, high-risk investments. The broker's firm settled the arbitration claim, then sought to have the arbitration panel expunge the allegations from the broker's public record. At a hearing, the panel allowed the broker to speak, unsworn and at length. Over her counsel's objection, it denied the former client the opportunity to cross-examine the broker or to speak herself. (*Royal Alliance Associates, Inc. v. Liebhaber*, *supra*, 2 Cal.App.5th at pp. 1097–1100.) The record suggested the arbitration panel may have felt itself too busy to allow each side the opportunity to present evidence. Addressing one member's thought that perhaps they should grant the

former client's request, the presiding arbitrator said, " 'Well, how can we make sure we're not going to be here for another two hours? That's the problem.' " (*Id.* at p. 1099.) The third panelist concurred, and the requests to speak and cross-examine the broker were denied. In its award, the panel found the broker credible and repeatedly relied on the former client's failure to dispute the broker's account or to offer evidence of financial losses. (*Id.* at pp. 1100–1102.) The award was vacated because "the hearing was not fair. The arbitrators gave [the brokerage] an unfettered opportunity to bolster the written record but denied [the client] even a limited chance to do the same." (*Id.* at p. 1110.)

In contrast, section 1286.2, subdivision (a)(5) does not contemplate vacation of an award merely because arbitrators refuse to consider evidence they find legally irrelevant, even if the irrelevance determination rests upon an incorrect legal foundation. (See *Schlessinger v. Rosenfeld, Meyer & Susman*, *supra*, 40 Cal.App.4th at pp. 1110–1111; *Hall v. Superior Court*, *supra*, 18 Cal.App.4th at pp. 438–439.) This case presents such a circumstance. The arbitrator refused to hear any evidence concerning Shivji's 998 offer because he viewed the underlying controversy submitted to him as a dispute over attorney fees. Having resolved that dispute, the arbitrator concluded he " 'no longer [had] jurisdiction to take any further action in this matter.' " (*Heimlich v. Shivji*, *supra*, 12 Cal.App.5th at p. 159, rev. granted.) There is a difference between a legal conclusion that jurisdiction is lacking and an arbitrary refusal to hear relevant evidence on an issue properly before the arbitrator. Shivji's complaint is with the underlying jurisdictional determination. Neither that determination nor the resulting refusal to consider evidence erroneously deemed irrelevant is

misconduct under the evidentiary prong of section 1286.2, subdivision (a)(5). Under *Moncharsh, supra*, 3 Cal.4th 1, the award should have been allowed to stand.

The Court of Appeal held the arbitrator erred by "refus[ing] even to hear evidence relevant to" the 998 offer. (*Heimlich v. Shivji, supra*, 12 Cal.App.5th at p. 176, rev. granted.) To support this conclusion, it relied principally on *Burlage v. Superior Court* (2009) 178 Cal.App.4th 524. There, the arbitrator ruled that any damages in the action were fixed at the date that escrow closed on the property at issue, and thereafter excluded evidence regarding postescrow events that would seem to have substantially limited the compensable damages. Consistent with our holding today, the majority acknowledged that it could not vacate the award based on the original legal error. (*Id.* at p. 530.) But the majority then went on to vacate based on the evidentiary rulings that logically followed from that error. (*Id.* at pp. 530–532.) As the dissent persuasively argued, "[v]irtually every ruling on a 'legal issue' at trial results in limiting the admissibility of evidence." (*Id.* at p. 532 (dis. opn. of Perren, J.).) To allow an arbitration award to be set aside under section 1286.2, subdivision (a)(5), whenever an erroneous legal ruling results in the exclusion of evidence deemed important would undermine a foundation of the Arbitration Act, that an arbitrator's legal error ordinarily is not judicially reviewable.

The *Hall* and *Schlessinger* view preserves the limits on judicial review while protecting against arbitrary refusal to hear one side's case. *Burlage* cannot be reconciled with these decisions. (*Burlage v. Superior Court, supra*, 178 Cal.App.4th at pp. 533–535 (dis. opn. of Perren, J.).) *Hall, Schlessinger*, and the *Burlage* dissent are more faithful to *Moncharsh* and the

Arbitration Act. *Burlage v. Superior Court, supra*, 178 Cal.App.4th 524, is disapproved to the extent it is inconsistent with this opinion.

As the party challenging the arbitrator's award and the trial court's judgment, Shivji must establish his entitlement to relief. His sole argument for vacating the arbitrator's award is an alleged refusal to hear evidence. (See § 1286.2, subd. (a)(5).) Accordingly, all other arguments are forfeited, and we do not consider whether any other basis for challenge might exist under the Arbitration Act.

Insofar as appears from the record, Shivji did not seek a stipulation that would allow the parties jointly to advise the arbitrator of a 998 offer. Instead, he chose to wait until shortly after the arbitrator's merits award to raise the issue. While Shivji was legally entitled to do so, he ran the risk that the arbitrator would erroneously refuse to award costs, leaving him without recourse under the narrow grounds for vacation or correction contained in the statutory scheme. " '[I]t is within the power of the arbitrator to make a mistake either legally or factually. When parties opt for the forum of arbitration they agree to be bound by the decision of that forum knowing that arbitrators, like judges, are fallible.' " (*Moncharsh, supra*, 3 Cal.4th at p. 12, quoting *That Way Production Co. v. Directors Guild of America, Inc.* (1979) 96 Cal.App.3d 960, 965.)

## III.   DISPOSITION

The Court of Appeal's judgment is reversed with directions to affirm the trial court's confirmation of the arbitration award and denial of costs.

**CORRIGAN, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Heimlich v. Shivji

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 12 Cal.App.5th 152
**Rehearing Granted**

_____

**Opinion No.** S243029
**Date Filed:** May 30, 2019

_____

**Court:** Superior
**County:** Santa Clara
**Judge:** William J. Elfving

_____

**Counsel:**

Ellahie & Farooqui, Javed I. Ellahie, Omair M. Farooqui and Leila N. Sockolov for Defendant and Appellant.

Law Offices of Nicholas D. Heimlich, Nicholas D. Heimlich and Caitlin E. Kaufman for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Omair M. Farooqui
Ellahie & Farooqui
1023 Corporation Way, 2nd Floor
Palo Alto, CA  94303
(408) 294-0404

Nicholas D. Heimlich
Law Offices of Nicholas D. Heimlich
5595 Winfield Boulevard, Suite 110
San Jose, CA  95123
(408) 457-9364