Filed 2/28/25  Shaffy v. Motykie CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| ELINA SHAFFY, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> GARY D. MOTYKIE et al., <br><br> Defendants and Respondents. | B330763 <br><br> (Los Angeles County <br> Super. Ct. No. 20STCV16319) |

APPEAL from an order of the Superior Court of Los Angeles County, Edward B. Moreton, Jr., Judge.  Affirmed.

Elina Shaffy, in pro. per., for Plaintiff and Appellant.

Cole Pedroza, Kenneth R. Pedroza, Dana L. Stenvick, Nathan J. Novak; Reback, McAndrews & Blessey, Gregory D. Werre for Defendants and Respondents.

Appellant Elina Shaffy challenges an order denying her petition to vacate an arbitration award entered in favor of respondent Dr. Gary Motykie and his plastic surgery practice, respondent Surgery on Sunset, Inc., on her medical negligence and medical battery claims against them.  We affirm.

## FACTS AND PROCEEDINGS BELOW

### A. Shaffy's Claims in Arbitration and Respondents' Defense

Shaffy initiated the underlying medical negligence and battery arbitration in 2020.  She claimed that Dr. Motykie, contrary to medical indications and her consent, had performed a "turbinectomy"—the complete removal of mucosal bony structures in the lower part of the nose called turbinates—resulting in her suffering from "empty nose syndrome."

Respondents do not dispute on appeal, nor did they at arbitration, that a turbinectomy is appropriate only in severe circumstances not present in Shaffy's case, and thus that, had Dr. Motykie performed a turbinectomy, such surgery would have been below the standard of care.  Rather, respondents' defense was that Dr. Motykie performed not a turbinectomy, but a turbinoplasty, which involves changing the position of the turbinates in the nasal passage, rather than removing them.  Respondents further presented evidence that Dr. Motykie's performance of this procedure was within the standard of care.

### B. Composition of Arbitration Panel and Initial Disclosures by Cooper

The matter was assigned to a panel of three arbitrators through JAMS:  retired California Court of Appeal Justice Candace Cooper, who the parties mutually agreed to include

2

on the panel, and party-appointed arbitrators Ariel Harman-Holmes (appointed by Shaffy) and John C. Kelly (appointed by respondents).

On January 15, 2021, JAMS sent a memorandum attaching a "disclosure report and checklist listing any prior or pending cases involving the parties, counsel or counsels' firms" in which Cooper had been involved.

The disclosure checklist bears a caption stating it relates to only Cooper ("Panelist name: Candace Cooper") and bears Cooper's signature. Cooper checked "yes" in response to questions whether she was "serving or within preceding 5 years [had] served: [¶] . . . As a neutral arbitrator in another arbitration involving a party, lawyer for a party, or law firm for a party to the current arbitration" and whether she "[had] any current arrangement with a party concerning prospective employment or other compensated service as a dispute resolution neutral or . . . [was] participating in or, within the last two years, [had] . . . participated in discussions regarding such prospective employment or service with a party." The checklist also discloses that Cooper is "an owner panelist of JAMS." It explains that approximately 100 JAMS neutrals hold such an ownership interest, that each "holds one share, . . . [is] not privy to information regarding the number of cases or revenue related to cases assigned to other panelists," and "[is] not informed about the extent to which their profit distributions"—which may not exceed 0.1 percent of JAMS total revenue in a given year—are impacted by any particular client, lawyer, or law firm. It states that shareholders do not receive credit for creation or retention of customer relationships.

3

Finally, Cooper answered "yes" to a checklist question as to whether she would "entertain offers of employment or new professional relationships in any capacity other than as a lawyer, expert witness, or consultant from a party, lawyer in the arbitration, or lawyer or law firm that is currently associated in the private practice of law with a lawyer in the arbitration while that arbitration is pending, including offers to serve as a dispute resolution neutral in another case." Both the memorandum and the attached checklist state that, in consumer arbitrations— which JAMS had determined the instant matter to be— the arbitrator will inform the parties of any such offer received while this arbitration is pending.

The checklist does not request Cooper to disclose whether Cooper had served as an arbitrator alongside the party-appointed arbitrators (Kelly and Holmes) in other arbitrations or other connections with the party-appointed arbitrators. The attached reports, however, identify several arbitrations in which Kelly's firm had represented a party in arbitration before Cooper. The memorandum describes the report as "[b]ased upon [Cooper's] own knowledge as well as a good faith search of records available to [Cooper] and JAMS personnel and . . . the information supplied concerning the names of the parties and their counsel." The memorandum informs Shaffy that "[n]othing in [the attached] report would, in the arbitrator's opinion, prohibit the arbitrator from impartially serving in this case."

4

### C. Post-Arbitration Hearing Disclosures by Cooper and JAMS

#### 1. *October 2022 Report Regarding Cooper*

A four-day arbitration hearing took place in June 2022. Several months after the arbitration hearing had concluded, Shaffy's counsel requested "information regarding . . . Cooper's case history with [Dr. Motykie], his attorney, and his insurer." JAMS responded in an October 17, 2022 letter that referred Shaffy to the disclosure checklist and represented that Cooper had not taken on any new arbitrations since executing it. The JAMS letter also enclosed, "as a courtesy," a report listing the specific number of arbitrations and mediations Cooper had handled within the reporting obligation time frame that involved any of the parties to the arbitration, their counsel, or the two other arbitrators. Like the January 2021 disclosure checklist and report, the October 2022 report bears the caption "Panelist: Candace Cooper" to indicate it relates to Cooper. The report reflects that, consistent with the January 2021 disclosure checklist and reports, Cooper had been an arbitrator in several cases in which Kelly's firm had represented a party.

As to Shaffy's request for information about arbitrations involving respondent's insurer, the letter states that "[g]enerally speaking[,] the Ethics Standards require disclosures in connection with the parties, lawyers, and law firms involved in the case. See standards 7 and 8 of the Ethics Standards. Respondent[s'] insurer is not on the service list in this arbitration and thus was not included in the arbitrator's initial disclosure statement. Nor does JAMS have any record of the parties previously requesting disclosures in connection with an insurer.

5

If the parties agree to courtesy disclosures in connection with the insurer, JAMS will provide them."

### 2. *Interim Award*

On October 24, 2022, the panel issued an interim award identifying Dr. Motykie as the "prevailing party" and requiring further proceedings to determine the amount of his attorney fees and costs. Cooper and Kelly signed the interim award; Holmes dissented.[1] Cooper and Kelly concluded that Dr. Motykie had *not* performed a turbinectomy. In so concluding, they relied on "[Dr. Motykie's] operative report, his sworn testimony, his not billing for a turbinectomy, and not submitting any tissue to pathology." (Capitalization omitted.) They also identified as a basis for their conclusion the opinions of respondents' expert, Dr. Suh, whom they deemed "the most qualified, thorough and credible expert witness." The award also identified the evidence Shaffy had offered and addressed several of Shaffy's criticisms of the evidence offered by respondents.

### 3. *January 2023 Supplemental Disclosures Regarding JAMS*

On December 21, 2022, Shaffy substituted in Ian Mackins as her attorney. This prompted a January 9, 2023 "notice to all

---

[1] In her brief to this court, Shaffy represents that she sent a notice of objections to JAMS on October 29, 2022 "objecting to Arbitrator Cooper" on various grounds, including grounds based on the October 2022 report regarding Cooper. The record citation she provides for this representation does not support it, nor has our independent review of the record revealed such a notice of objections. Whether Shaffy objected to Cooper serving as an arbitrator at any point prior to her filing of the petition to vacate does not, however, affect our analysis of the issues on appeal.

6

parties" from JAMS (capitalization omitted) providing: "Ian Mackins of Ian Mackins Attorney at Law is now involved in this matter. Enclosed please find a supplemental commencement disclosure report." The enclosed report describes its contents as follows: "This report lists the numbers of cases JAMS has administered in the last five years involving any party, lawyer, or law firm in the present case." Consistent with the report being one regarding the arbitrations that JAMS—not Cooper— has handled, it does not bear a heading or caption identifying Cooper as a subject of the report (as was the case with the January 2021 and October 2022 reports); rather, the report was captioned only by the case name and JAMS reference number. It does not mention Cooper. Also consistent with this report being a disclosure about JAMS's connections with the parties and their counsel, rather than a disclosure regarding a particular neutral, the report further states: "This report is not provided to JAMS' neutrals and will not be provided to the *neutral eventually selected for this matter. . . .* [¶] . . . [¶] Once appointed in this case, the neutral will issue his or her own required disclosures." (Italics added.)

The report reflects, inter alia, that the firm of respondents' appointed arbitrator, Kelly, and respondents' counsel had been involved in or were currently involved in numerous matters before JAMS.

According to Shaffy, Mackins failed to relay the January supplemental disclosures to Shaffy until many months later, something she characterizes as creating "irreconcilable differences" between her and Mackins.

## D.   Petition To Vacate Final Arbitration Award

The panel issued a final arbitration award adopting the interim award.

Shaffy petitioned the court to vacate the arbitration award. In her petition, Shaffy argued that vacatur was required because her "rights were substantially prejudiced by Arbitrator Cooper's misconduct"—namely, Cooper's failure to issue a timely award, failure to submit admitted exhibits to the court reporter, and her having considered respondents' unauthenticated, unreliable report, thereby "demonstrat[ing] . . . Cooper's partiality toward respondents."  (See Code Civ. Proc., § 1286.2, subd. (a)(3).)[2] Shaffy also argued for vacatur on the basis that Cooper exceeded her powers by, inter alia, admitting Dr. Suh's testimony on the standard of care, despite respondents not having designated him as a standard of care expert.  (See § 1286.2, subd. (a)(4).)  Shaffy also argued that the award should be vacated because Cooper had refused to admit evidence material to the controversy—namely, a CT scan she claims would have impeached Dr. Suh and testimony of an unidentified "impeachment witness that would have testified that Dr. Motykie had a pattern and practice of resecting turbinates and not properly documenting the procedure." (Boldface & italics omitted.)  (See § 1286.2, subd. (a)(5).)  Finally, she argued the award should be vacated because the arbitration agreement did not specify that arbitration would be binding.

Respondents filed an untimely opposition, and Shaffy filed a reply brief in which she addressed both the merits of her petition and urged the court not to consider the late-filed

---

[2] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

opposition. Respondents submitted a surreply addressing the timeliness of their opposition.

Shaffy submitted a second reply brief, in which she not only addressed the timeliness arguments in respondents' surreply, but also argued for the first time that Cooper engaged in misconduct by failing to make timely required disclosures. In a declaration attached to the reply, she represented that she had only "recently" received from her former counsel a copy of the January 15, 2021 memorandum regarding Cooper's initial disclosures.

At a May 5, 2023 hearing on the petition, Shaffy's counsel "indicated that [Shaffy] wished to retain new counsel and requested a continuance of [the] hearing for that purpose." The court denied the request and proceeded with the hearing on the petition.

In its May 5, 2023 minute order, the court adopted its tentative ruling denying Shaffy's petition to vacate. The order also states the court had exercised its discretion to consider respondents' untimely opposition brief. The order does not address Shaffy's disclosure-based arguments raised for the first time in her second reply brief, nor does the record reveal whether the court considered these arguments.

This appeal followed.

## DISCUSSION

Shaffy argues that the court reversibly erred in denying her petition to vacate, a decision we review de novo. (See *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9.)

Shaffy identifies as a bases for vacatur the arbitration panel's purported refusal to "hear" certain evidence crucial to

9

Shaffy's claims.  (§ 1286.2, subd. (a)(5).)  She also argues Cooper's purported failure to properly disclose sources of bias required vacatur.  Shaffy further argues that we should reverse the court's denial of her petition because the court abused its discretion by refusing to continue the hearing thereon so she could obtain new counsel.

## A.     *Vacatur Based on Refusal To "Hear" Evidence*

A court may vacate an arbitration award on the basis that "[t]he rights of the party were substantially prejudiced by the refusal of the arbitrators . . . to *hear* evidence material to the controversy."  (§ 1286.2, subd. (a)(5), italics added.)  In particular, she identifies the following as not having been "hear[d]" by the panel:  (1) A CT scan that she argues was essential to discrediting Dr. Suh; (2) testimony of an unidentified "impeachment witnesses to discredit . . . [Dr.] Motykie's testimony"; and (3) "the testimony of Dr. Marc Kayem, who testified that the sinusitis findings on endoscopy, as mischaracterized [by] the defense-retained [independent medical expert, presumably Suh], would be impossible to see on nasal endoscopy" which testimony "was crucial to rebutting Dr. Suh's unsupported findings."

Shaffy does not claim she was denied the opportunity to propose that the panel consider this evidence.  Nor does she claim the panel incorrectly applied the rules of evidence in refusing to consider this evidence.[3]  Instead, she argues that the panel did

---

[3] Even if she had so argued, however, vacatur under section 1286.2, subdivision (a)(5) "must rest on more than a simple error in applying the rules of evidence."  (*Heimlich v. Shivji* (2019) 7 Cal.5th 350, 368 (*Heimlich*).)

10

not "hear" this material evidence, and that this substantially prejudiced her. According to Shaffy, this is sufficient to require vacatur under section 1286.2, subdivision (a)(5). But section 1286.2, subdivision (a)(5) does not permit a court to vacate an arbitration award on the basis that the arbitrator declined to consider any and all evidence submitted by a party, as seems to be Shaffy's claim. Rather, an arbitrator must give each party a fair opportunity to present evidence and must consider evidence appropriately presented. (See *Heimlich, supra,* 7 Cal.5th at pp. 368–369.) This is because the "vacation of an award for 'refusal . . . to hear evidence material to the controversy' . . . was designed as a 'safety valve in private arbitration that permits a court to intercede when an arbitrator has prevented a party from fairly presenting its case.' [Citation.]" (*Id.* at p. 368; see also *id.* at p. 367 [bases for vacatur involve " 'circumstances involving serious problems with the award itself, or with the fairness of the arbitration process' "]; *VVA-TWO LLC v. Impact Development Group, LLC* (2020) 48 Cal.App.5th 985, 989 [section 1286.2 "limit[s] the bases for vacatur of an arbitration award to a short list of situations in which . . . some flaw in the arbitral proceedings or award render[s] them fundamentally unfair or unauthorized"].) Thus, only when a refusal to hear evidence also effectively denies a party " ' "an opportunity to be heard" ' " can such refusal provide a basis for vacatur. (*Heimlich, supra,* at p. 368.) "It comes into play, for example, when an arbitrator, without justification, permits only one side to present evidence on a disputed material issue. (See *Moncharsh* [*v. Heily & Blase* (1992) 3 Cal.4th 1,] 13.)" (*Heimlich, supra*, at p. 368.)

11

The record reflects that, for the purposes of section 1286.2, subdivision (a)(5), the panel appropriately "heard" the evidence Shaffy presented. Namely, the record supports that the panel received evidence from both parties and weighed the evidence it deemed reliable and legally relevant. The arbitral award contains a lengthy recitation and analysis of the evidence presented by both sides, acknowledging that "[t]here is a conflict in the evidence regarding [the dispositive] allegation [that Dr. Motykie performed a turbinectomy]." The award expressly identifies "[Shaffy's] proof of the allegation that Motykie removed her turbinates" that the panel considered— "primar[ily] . . . Motykie's medical records, including the nurses' notes; and . . . expert testimony"—and then weighs this evidence against that offered by respondents, addressing many of Shaffy's criticisms of the respondents' evidence as well.

The record further suggests that the panel's exclusion of some of Shaffy's evidence was based on the panel's evidentiary legal analysis, something neither we nor the trial court are empowered to second guess. (See *Heimlich, supra*, 7 Cal.5th at p. 369 [section 1286.2, subdivision (a)(5) "does not contemplate vacation of an award merely because arbitrators refuse to consider evidence they find legally irrelevant, even if the irrelevance determination rests upon an incorrect legal foundation"].) Namely, the record suggests the panel excluded the CT scan because it lacked foundation, and excluded the testimony regarding Dr. Motykie's pattern and practice on the basis that it should have been included in Shaffy's case-in-chief and was not proper impeachment testimony. The record does not appear to reflect whether or why the panel excluded testimony regarding the ability to diagnose sinusitis with an endoscopy.

But an arbitrator need not provide a specific legal reason for excluding evidence if the record supports—as it does here—that such an exclusion did not deny either party a meaningful opportunity to present his or her case.  Moreover, Shaffy arguably forfeited any arguments based on the purported refusal to consider this evidence regarding sinusitis diagnoses, because she failed to raise the issue in her petition below.

The arbitration award ultimately concludes that, "[a]lthough there is credible evidence on both sides, the evidence does not meet the standard of proof that it is more likely than not that Motykie performed a resection of Shaffy's inferior turbinates," which both sides acknowledge was a threshold issue for all of Shaffy's claims.  This assessment of the evidence does not reflect a refusal to "hear" evidence.  (See *Heimlich, supra*, 7 Cal.5th at p. 369.)

## B.    Cooper's Disclosures and Sources of Bias[4]

Shaffy contends that Cooper failed to properly disclose certain sources of bias, and that this requires vacatur under section 1286.2.  Namely, she argues:  (1) purported deficiencies in Cooper's January 2021 disclosures constitute a "fail[ure] to

---

[4] Respondents argue that, because Shaffy did not timely raise her disclosure-based arguments below and offered evidence to support them for the first time in her second reply brief, respondents were "not afforded an opportunity to present evidence or argument in response to Shaffy's positions . . . at the trial court level," "are similarly precluded from doing so for the first time on appeal," and thus, "[t]o avoid undue prejudice to [respondents], this court should decline to consider [the disclosure-based arguments]."  (Capitalization omitted.)  Cognizant of these issues, we exercise our discretion to nevertheless address the merits.

disclose . . . a ground for disqualification of which the arbitrator was then aware" (§ 1286.2, subd. (a)(6)(A)); (2) the information in the October 2022 and January 2023 additional disclosures establish Cooper was "subject to disqualification" (*id.*, subd. (a)(6)(B)); (3) Cooper's failure to properly disclose sources of bias constitutes "misconduct" that "substantially prejudiced" Shaffy's rights (*id.*, subd. (a)(3)); and (4) Cooper's initial failure to disclose, as well as the information ultimately revealed in subsequent disclosures, establish "corruption . . . of the arbitrator" (*id.*, subd. (a)(2)), and that "[t]he award was procured by corruption, fraud or other undue means." (§ 1286.2, subd. (a)(1).)

### 1. *Failure To Disclose*

These arguments rest in large part on a misunderstanding of the disclosure documents. Namely, Shaffy argues that Cooper "failed to disclose her ongoing business relationships with [respondents'] arbitrator (Arbitrator Kelly) and his firm, [and also did not] disclose her cases with [respondents'] insurer and [respondents'] counsel's law firm" in her January 2021 disclosure. But the January 2021 report *did* disclose Cooper's current and past arbitrations involving Kelly's firm, and although the disclosure checklist did not expressly ask about connections with fellow arbitrators, Cooper checked "yes" in response to the question about "serving . . . [¶] . . . [a]s a neutral arbitrator in another arbitration involving a party, lawyer for a party, or law firm for a party to the current arbitration."

Nor does the January 2023 disclosure suggest, as Shaffy contends, that Cooper's January 2021 disclosures were incomplete or untruthful. The January 2023 report lists the numbers of *all* JAMS arbitrations involving any party, counsel,

14

or party arbitrator in the instant arbitration—not those handled by Cooper. Thus, there is nothing inconsistent about the January 2023 disclosure (regarding JAMS) identifying several arbitrations involving respondents' counsel, but the January 2021 and October 2022 disclosure (regarding Cooper) not identifying any connections with respondents' counsel.

As to Cooper's purported failure to disclose arbitrations she has handled involving respondents' insurer, Shaffy fails to point to anything in the record suggesting Cooper has handled any such matters. Moreover, even if she had, neither the initial disclosure checklist, nor the relevant statutory and ethical disclosure requirements, mandate disclosure of matters involving parties not related to parties to the arbitration and not serving as the parties' counsel. (See § 1286.2, subd. (a)(6)(A) [failure to disclose information that provides a basis for disqualification under section 1281.91]; § 1281.91 [bases for disqualification of an arbitrator, including failure to comply with disclosure obligations in sections 1281.9 and 170.1]; § 170.1 [bases for disqualification of a judge]; § 1281.9 [bases for disqualification, including failure to disclose "[a]ny matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council pursuant to this chapter"]; Cal. Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration, standard 7 [identifying the matters that must be disclosed by a person nominated or appointed as an arbitrator].)

Thus, the record does not support that Cooper's initial disclosures were incomplete, untruthful, or that they violated the applicable disclosure requirements in the manner Shaffy contends. Accordingly, section 1286.2, subdivision (a)(6)(A) is not a basis for vacating the award.

15

## 2.    *Fraud and Corruption*

Because the record does not support that Cooper failed to comply with the applicable disclosure obligations, any such purported failure also cannot provide a basis for finding fraud, corruption, or misconduct under section 1286.2, subdivision (a)(1), (a)(2), or (a)(3).

## 3.    *Disqualification*

Shaffy argues that Cooper was subject to disqualification because she worked on arbitrations involving respondents' counsel, Kelly's firm, and respondents' insurer, and thus that the court should have vacated the award under section 1286.2, subdivision (a)(6)(B).  As discussed above, the record does not support that Cooper served as a neutral in any matter involving respondents' counsel.  As to Shaffy's arguments regarding Kelly's firm and respondents' insurer, section 1286.2, subdivision (a)(6)(B) does not apply.  That section requires vacatur of an award issued by an arbitrator who is "subject to disqualification upon grounds specified in Section 1281.91." (§ 1286.2, subd. (a)(6)(B).)  Section 1281.91 specifies as grounds for disqualification that an arbitrator "fails to comply with Section 1281.9" (§ 1281.91, subd. (a)), which in turn requires disclosure of various relationships, none of which involve third parties who are neither counsel for a party nor related to a party.  (§§ 170.1, 1281.9; Cal. Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration, standard 7.)  Nor do any of these disclosure requirements involve relationships with fellow arbitrators in the matter or their law firms.  Thus, the record does not support that Cooper was subject to disqualification in a manner that would support vacatur under section 1286.2, subd. (a)(6)(B).

16

### C. Motion for Continuance

Finally, Shaffy argues that the court erred in denying her a continuance. She appears to contend that, had she been granted a continuance to obtain new counsel, her new counsel would have been in a better position to more fully develop her disclosure based arguments. She criticizes her counsel for not timely sharing with her the January 2023 disclosures that were the "proverbial 'smoking gun'" and "consequently . . . reduc[ing] the] likelihood that he would zealously advocate for her based on [the disclosures] because they were the basis for the petition to vacate for which she engaged him." As we discuss at Discussion, part B, *ante*, however, the disclosure documents do not reflect a failure to disclose or bases for disqualification, and thus do not support her petition for vacatur. The denial of a continuance thus was not prejudicial in the manner Shaffy posits and does not provide a basis for the relief she seeks on appeal.

17

**DISPOSITION**

The order is affirmed.  The parties shall bear their own costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


WEINGART, J.


M. KIM, J.

18