Filed 1/22/25  Margiotta v. UBS Financial Services CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHAEL MARGIOTTA, | B322555 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22STCP01100) |
| v. | |
| UBS FINANCIAL SERVICES, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Upinder S. Kalra, Judge.  Affirmed.

Zarmi Law and David Zarmi for Plaintiff and Appellant.

Keesal, Young & Logan and Elizabeth H. Lindh for Defendant and Respondent.

―――――――――――――

Appellant Michael Margiotta was employed by respondent UBS Financial Services, Inc. (UBS) for approximately seven years. As part of Margiotta's benefits package, UBS made Margiotta four substantial loans which UBS agreed to forgive over time if Margiotta remained in UBS's employ, but which became due immediately if unpaid at the time of Margiotta's separation. Margiotta left UBS in 2015, and the company initiated arbitration to recover the unpaid principal of more than $600,000 it claimed was due under the notes, plus interest and attorney fees. Margiotta acknowledged the loans, but contended he had prepaid them in substantial part and owed far less than UBS claimed. A panel of arbitrators conducted a four day hearing, and then awarded UBS the unpaid principal it sought, plus interest, arbitration costs, and attorney fees, for a total award of approximately $950,000. The trial court denied Margiotta's petition to vacate the award, granted UBS's petition to confirm, and entered judgment on the award.

On appeal, Margiotta contends the arbitration award must be vacated pursuant to *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 (*Armendariz*) because the arbitrators (1) did not describe their findings of fact and conclusions of law in sufficient detail to permit meaningful judicial review, and (2) awarded arbitration costs and attorney fees against Margiotta. We conclude that *Armendariz* and its progeny do not govern this arbitration, and the arbitrators did not exceed their powers within the meaning of Code of Civil

Procedure[1] section 1286.2, subdivision (a)(4).  We therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  Margiotta's employment with UBS; the loans and promissory notes.

UBS hired Margiotta as a Senior Vice President of Investments in October 2008.  As set forth in a letter of understanding executed by UBS and Margiotta, part of Margiotta's compensation package included a loan of $1,411,442.  The loan would be made within 30 days of Margiotta's hire, payable over nine years, and evidenced by a promissory note.  Margiotta and UBS further agreed that pursuant to a Transition Agreement to be executed by the parties, UBS would pay Margiotta nine "transition payments" on the first nine anniversaries of his hire in amounts equal to one-ninth of the loan plus interest, provided that Margiotta remained employed by UBS on the dates of such payments.  The letter of understanding also provided that if Margiotta's commissions exceeded specified amounts, he would receive additional loans.  Finally, the letter of understanding contained an arbitration provision stating that any disputes between Margiotta and UBS concerning compensation, benefits, or other terms or conditions of employment would be resolved by arbitration conducted under the auspices and rules of the Financial Industry Regulatory Authority (FINRA) pursuant to the arbitration law of the state of New Jersey.

---

[1]     All subsequent undesignated statutory references are to the Code of Civil Procedure.

On November 3, 2008, the parties executed a promissory note stating that Margiotta agreed to repay a principal sum of $1,411,442 over a nine-year term, due annually in increments of $156,826, at an annual interest rate of four percent.  Pursuant to the note, Margiotta authorized UBS "to offset the [annual] payments at the time they are due from any salary, commission, bonus or other compensation payable to [Margiotta] by [UBS]. Notwithstanding the foregoing, to the fullest extent permitted by law, [Margiotta] additionally authorizes [UBS] to offset the [annual] payments on a monthly basis in advance of when they are due from any salary, commission, bonus or other compensation payable.  All amounts prepaid to [UBS] shall be applied as payments on the Principal Amount due."  Principal and interest due under this promissory note "may be prepaid in whole or in part at any time by [Margiotta].  Any payments or prepayments (whether voluntary or mandatory) shall be applied at the option of [UBS], first to collection costs, if any, then to accrued interest and then to principal."

Pursuant to its terms, the note "shall immediately become due and payable . . . in the event that [Margiotta's] employment with [UBS] is terminated, either voluntarily or involuntarily by [Margiotta] or [UBS], for any reason whatsoever."  Further, "[i]n the event that any arbitration, suit or other proceeding is brought against [Margiotta] to collect this Promissory Note, [UBS] shall be entitled to recover from [Margiotta] all costs and reasonable expenses of collection and enforcement, including, without limitation, attorneys' fees and disbursements.  In addition, in the event of a payment default hereunder, [Margiotta] shall pay all reasonable attorneys' fees and disbursements incurred by [UBS]

4

in obtaining advice as to its rights and remedies in connection with such default."

The parties executed three subsequent promissory notes containing the same basic terms as those described above. Specifically: (1) on November 5, 2010, the parties executed a promissory note providing that Margiotta agreed to repay a principal sum of $588,101 at an annual interest rate of 2.08 percent over a six-year term, due annually in increments of $98,016; (2) on April 25, 2014, the parties executed a promissory note providing that Margiotta agreed to repay a principal sum of $27,296 at an annual interest rate of 2.19 percent over a six-year term, due annually in increments of $4,549; and (3) on February 20, 2015, the parties executed a promissory note providing that Margiotta agreed to repay a principal sum of $21,288 at an annual interest rate of 2.02 percent over a six-year term, due annually in increments of $3,548.

## II.    The arbitration proceeding and award.

Margiotta left his employment with UBS in June 2015. Thereafter, in September 2017, UBS filed an arbitration demand and statement of claim with FINRA against Margiotta seeking the total unpaid loan principal of $648,137, plus interest, attorney fees and costs. UBS asserted:

—As to the first promissory note for $1,411,442, Margiotta paid six of the nine annual installment payments of $156,826, plus prepayments of $40,999. The unpaid principal balance was $429,481, plus interest.

—As to the second promissory note for $588,101, Margiotta paid four of the six annual installment payments of $98,016, and made prepayments of $20,426. The unpaid balance was $175,607, plus interest.

—As to the third promissory note for $27,296, Margiotta paid one of the six annual installment payments of $4,549, and made prepayments of $552. The unpaid balance was $22,195, plus interest.

—As to the fourth promissory note for $21,288, Margiotta paid none of the six annual installment payments of $3,548, but made prepayments of $435. The unpaid balance was $20,853, plus interest.

Based on the foregoing, UBS asserted claims for breach of contract, common count for money lent, common count for account stated, and unjust enrichment.

Margiotta filed an answer and counterclaim denying UBS's claims and asserting affirmative claims for violation of the federal Exchange Act, fraud, and fraudulent inducement. Margiotta sought compensatory and punitive damages.

In his arbitration brief, Margiotta contended that UBS's loans were forgiven monthly, not annually, and that UBS forgave approximately $156,000 of the loans between his anniversary date and the date he terminated his employment. Margiotta urged: "Either the deductions incurred in between [Margiotta's] anniversary date and his termination from UBS were due to ETP [employee transition program] loan forgiveness, or they were a scheme for UBS to transfer its corporate tax liability to its employees by pretending to pay monies to its employees, deducting the phantom payments as payroll, and having the employee pay taxes on them so UBS did not have to. If the amounts are ETP loan forgiveness, they're legal. If it is a scheme to transfer tax liability, it is not." Margiotta further contended that if the deductions were for anything other than loan forgiveness, they would be prohibited by Labor Code section

2802, which requires an employer to indemnify an employee for all losses incurred by him while discharging his duties.

A four-day arbitration hearing was conducted in January 2022. On January 27, 2022, the arbitrators issued an award finding that Margiotta was liable to UBS for unpaid principal and interest on the notes in the amount of $763,609, plus attorney fees and costs of $182,355. The arbitrators denied Margiotta's counterclaims and assessed each party arbitration fees of $6,500.

## III. Margiotta's petition to vacate and UBS's petition to confirm the arbitration award.

Margiotta filed a petition to vacate the arbitration award. He contended that by the end of his employment, UBS had deducted $644,556 in prepayments from his wages to pay off his principal, but only credited him with $62,402. He further claimed that if UBS did not apply the prepayments to the balances due on the notes, the prepayments "had been deducted from his wages for an unauthorized purpose, which would be a violation of Labor Code Section 221." Margiotta thus urged that the arbitration concerned his unwaivable statutory rights under the Labor Code, and the arbitrators were required to comply with the requirements of *Armendariz*, *supra*, 24 Cal.4th 83. Margiotta claimed the arbitrators failed to do so because they did not issue detailed written findings concerning unwaivable statutory rights under the Labor Code, and required Margiotta to pay arbitrator and forum fees and attorney fees.

UBS opposed the petition to vacate and filed a petition to confirm the arbitration award. UBS contended that *Armendariz* did not apply to this case, Margiotta never pled a Labor Code violation, the arbitrators did not make findings on any Labor

7

Code issue, a reasoned decision was rendered, and the arbitrators did not exceed their authority by assessing forum fees and attorney fees against Margiotta.

After a hearing, the trial court confirmed the arbitration award, finding that *Armendariz* did not apply, the arbitrators issued a written ruling, and UBS was entitled to recover its attorney fees pursuant to the terms of the promissory notes. The court entered judgment on the arbitration award on July 20, 2022. Margiotta timely appealed.

## DISCUSSION

### I. Legal standards and standard of review.

The California Arbitration Act (§ 1280 et seq.) provides for limited review of arbitration awards. In broad strokes, under the statute a court may vacate an award only if it was (1) procured by corruption, fraud, or undue means, (2) issued by a corrupt arbitrator, (3) affected by prejudicial misconduct on the part of the arbitrator, (4) in excess of the arbitrator's powers, (5) prejudiced by the arbitrators' refusal to postpone the hearing for good cause or to hear material evidence, or (6) issued by an arbitrator who failed to timely disclose a ground for disqualification or to disqualify himself or herself upon proper demand. (§ 1286.2, subds. (a)(1)–(6).)

Margiotta sought to vacate the arbitration award under section 1286.2, subdivision (a)(4)—that is, on the ground that the arbitrators "exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." Judicial review on this ground is extremely limited. Our Supreme Court has explained: "Because 'arbitral finality is a core component of the parties' agreement to

8

submit to arbitration' (*Moncharsh v. Heily & Blase* [(1992)] 3 Cal.4th [1,] 10 [(*Moncharsh*)]), and because arbitrators are not required to make decisions according to the rule of law, parties to an arbitration agreement accept the risk of arbitrator errors (*id.* at p. 12), and arbitrator decisions cannot be judicially reviewed for errors of fact or law even if the error is apparent and causes substantial injustice (*id.* at pp. 11, 33; see *Vandenberg v. Superior Court* [(1999)] 21 Cal.4th [815], 832)." (*Berglund v. Arthroscopic & Laser Surgery Center of San Diego, L.P.* (2008) 44 Cal.4th 528, 534; see also *Heimlich v. Shivji* (2019) 7 Cal.5th 350, 367 ["Most legal errors in arbitration are not reviewable"]; *Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916 ["Generally, courts cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial injustice to the parties"].)

Our Supreme Court has recognized a limited exception to this principle where confirming the arbitration award "would be inconsistent with the protection of a party's *statutory rights.*" (*Moncharsh*, *supra*, 3 Cal.4th at p. 32, italics added; *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 77.) However, "[i]n light of the legislative policy in favor of arbitral finality . . . courts should be reluctant to invalidate an award on such a ground '[w]ithout an explicit *legislative* expression of public policy.' (*Moncharsh*, at p. 32, italics added.)" (*J-M Manufacturing*, at p. 77.) That is, " '[a]bsent a clear expression of illegality or public policy undermining' the statutory presumption favoring private arbitration and the finality of arbitral awards, 'an arbitral award should ordinarily stand immune from judicial scrutiny.' " (*Ibid.*, quoting *Moncharsh*, at p. 32.)

9

We review de novo the superior court's decision confirming or vacating an arbitration award, but the arbitrator's award is entitled to deferential review. (*California Statewide Law Enforcement Assn. v. Department of Personnel Administration* (2011) 192 Cal.App.4th 1, 13; *Jordan v. California Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 443–444.)

## II. Margiotta has not established that the arbitrators' award violated his unwaivable statutory rights.

Margiotta's appeal relies almost entirely on the Supreme Court's decision in *Armendariz, supra*, 24 Cal.4th 83, which specified minimum procedural requirements for arbitration of some statutory claims. Margiotta asserts that because the agreement to arbitrate arose in the context of an employment relationship, the arbitrators (1) were required to set forth their factual findings and legal conclusions in writing and in sufficient detail to be reviewable by a court, and (2) could not assess forum fees and attorney fees against him. Because the award was "a barebones affair . . . with no findings of fact or conclusions of law" and imposed attorney fees and forum costs on him, Margiotta asserts the award must be vacated.

*Armendariz* does not govern the present case. *Armendariz* was filed by two low-wage workers who claimed they had been subjected to sexual harassment and discrimination at work in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). (*Armendariz, supra*, 24 Cal.4th at pp. 90–91.) The employers sought to compel arbitration of the employees' claims based on mandatory arbitration agreements imposed as a condition of employment. (*Id.* at pp. 90–92.) The central issue before the Supreme Court was whether employees may be compelled to arbitrate antidiscrimination claims brought

10

under FEHA.  (*Id.* at pp. 90–91.)  The court held that employees *could* be compelled to arbitrate FEHA claims *if* the arbitration permitted them to "vindicate [their] statutory rights" under FEHA (*id.* at pp. 90–90)—that is, so long as the arbitration " '(1) provide[d] for neutral arbitrators, (2) provide[d] for more than minimal discovery, (3) require[d] a written award, (4) provide[d] for all of the types of relief that would otherwise be available in court, and (5) [did] not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum' " (*id.* at p. 102.)

The Supreme Court applied its *Armendariz* analysis in the context of a petition to vacate an arbitration award in *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 680 (*Pearson*).  There, the court held that a reviewing court may vacate an arbitration award if "an employee subject to a mandatory employment-arbitration agreement [was] unable to obtain a hearing on the merits of [his or her] FEHA claims, or claims based on other unwaivable statutory rights, because of [an arbitrator's] legal error."  (*Ibid.*)  Stated otherwise, "construing the [California Arbitration Act] in light of the Legislature's intent that employees be able to enforce their right to be free of unlawful discrimination under FEHA, an arbitrator whose legal error has barred an employee subject to a mandatory arbitration agreement from obtaining a hearing on the merits of a claim based on such right has exceeded his or her powers within the meaning of Code of Civil Procedure section 1286.2, subdivision (a)(4), and the arbitrator's award may properly be vacated."  (*Ibid.*)  Subsequently, in *Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 918, the Supreme Court noted *Pearson*'s "limited application," explaining that the legal error at issue in

11

*Pearson* impacted " '*the procedural framework* under which the parties agreed the arbitration was to be conducted,' " rather than " 'the law governing the claim itself.' " (*Richey*, at p. 918, quoting *Pearson*, at pp. 679–680, italics added.)  That distinction "explained the narrow application of [*Pearson*'s] holding" and "did not mean that all legal errors are reviewable."  (*Richey*, at p. 918.)

In the present case, the trial court correctly concluded that the arbitration award was not subject to the principles articulated in *Armendariz* and *Pearson*.  Significantly, both *Armendariz* and *Pearson* involved claims brought *by employees* to vindicate "unwaivable statutory rights" (*Pearson*, *supra*, 48 Cal.4th at p. 680)—that is, rights under a law " 'established for a public reason' " (*Armendariz*, *supra*, 24 Cal.4th at p. 100).  The claims in the present case, in contrast, were *nonstatutory claims* (breach of contract, money lent, account stated, and unjust enrichment) asserted *by an employer* to recover unpaid loans.  Plainly, the claims did not involve rights granted to employees for reasons of public policy.  (Compare *Armendariz*, at p. 100 ["no question" that the statutory rights granted by FEHA are " 'for a public reason' "—i.e., " ' "to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgement on account of race, religious creed, color, national origin, ancestry, physical handicap, medical condition, marital status, sex or age" ' "].)

Margiotta concedes that UBS's claims against him did not involve unwaivable statutory rights, but he asserts that the arbitration nonetheless was subject to the principles articulated in *Armendariz* and *Pearson* because he "raised Labor Code wage violations in his defense."  Essentially, Margiotta contends UBS

12

was not entitled to collect the amounts it claimed were owed on the notes because Margiotta had been prepaying the loans through payroll deductions for which UBS had not credited him. By awarding UBS the full amount it sought, Margiotta urges, the arbitrators allowed UBS to "claw back wages already paid." Margiotta contends the arbitration award thus had the effect of compelling a violation of Labor Code section 221, which makes it unlawful for an employer "to collect or receive from an employee any part of wages theretofore paid by said employer to said employee," and Labor Code section 224, which permits deductions from wages if authorized by state or federal law or by the employee in writing.

There are a number of problems with Margiotta's contention. As a preliminary matter, Margiotta has not cited any authority for the basic proposition that underlies his claim—i.e., that *Armendariz* applies to Labor Code claims asserted as defenses, rather than as affirmative claims for relief. (*Bedard v. City of Los Angeles* (2024) 106 Cal.App.5th 442, 458, fn. 11 [absence of citation to legal authority allows appellate court to treat contentions as forfeited]; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 [same].) Moreover, nothing in our appellate record suggests that Margiotta preserved the issue for judicial review by urging the arbitrators that they were required to set forth their factual findings and legal conclusions in sufficient detail to be reviewable by a court. A party cannot remain silent on an issue and then claim on appeal that he is entitled to relief. (See, e.g., *Mossman v. City of Oakdale* (2009) 170 Cal.App.4th 83, 93 [" ' "[I]t is well settled that a party may not sit idle through an arbitration proceeding and then collaterally attack that procedure on grounds not raised before

13

the arbitrators when the result turns out to be adverse" ' "]; *Moncharsh*, *supra*, 3 Cal.4th at p. 30 ["we cannot permit a party to sit on his rights, content in the knowledge that should he suffer an adverse decision, he could then raise the illegality issue in a motion to vacate the arbitrator's award. A contrary rule would condone a level of 'procedural gamesmanship' that we have condemned as 'undermining the advantages of arbitration' "].)

For all the foregoing reasons, the trial court properly confirmed the arbitration award and entered judgment thereon.

## DISPOSITION

The judgment is affirmed.  Respondent UBS is awarded its appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

HANASONO, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15