Filed 1/27/26  White v. Gerard Cosmetics CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SHAUN WHITE,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>GERARD COSMETICS, INC., et al.,<br><br>Defendants and Respondents. | B346758<br><br>(Los Angeles County Super. Ct. No. 19STCV33840) |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Kerry R. Bensinger, Judge.  Affirmed.

Shaun White, self-represented litigant, for Plaintiff and Appellant.

Law Offices of Perry H. Rausher, Perry H. Rausher, for Defendants and Respondents.

# I.     INTRODUCTION

Plaintiff Shaun White appeals from a judgment entered following the trial court's confirmation of an arbitration award in favor of defendants Gerard Cosmetics, Inc. and Jennifer Gerard. We affirm the orders denying the petition to vacate and granting the petition to confirm it.

# II.     BACKGROUND

## A.     *Settlement Agreement*

On September 23, 2019, plaintiff filed a complaint against defendants asserting, among other causes of action, a claim for wrongful discharge in violation of public policy (*White v. Gerard Cosmetics, Inc., et al.,* Super. Ct. L.A. County, 2019, No. 19STCV33840). Following a mediation, the parties reached a settlement, as memorialized in a settlement agreement executed September 20, 2022 (agreement), pursuant to which defendants' insurer agreed to deposit $1,000,000 in a trust that would disburse payments to plaintiff and others as required by the terms of the agreement. Among other terms, the agreement contained non-contact, non-disparagement, confidentiality, and non-disclosure provisions. It also specified penalties for violations of those provisions, including forfeiture of payments due plaintiff under the agreement from amounts held in the settlement trust and liquidated damages of $15,000 for each such violation. The agreement further provided that, if the retired judge who mediated the dispute was unavailable to adjudicate

2

claimed breaches of the agreement, those claims would be resolved in binding arbitration before alternative dispute resolution provider Signature Resolution (Signature); the parties would share the arbitration fees equally at the outset, but the prevailing party would be entitled to recover from the losing party all arbitration fees, attorney fees, and costs incurred in the arbitration; and any awards rendered by the arbitrator would be "binding, final, and non-appealable."

On January 24, 2023, the trial court dismissed the action with prejudice pursuant to a stipulation that the court would retain jurisdiction to enforce the terms of the agreement under Code of Civil Procedure section 664.6.[1]

B. *Arbitration and Award*

Based on plaintiff's alleged breaches of the agreement, defendants submitted to Signature a demand for arbitration against plaintiff. On August 22, 2024, the arbitrator held a case management conference during which he denied defendants' request for entry of plaintiff's default due to his late payment of arbitration fees but advised that any future failure to timely pay fees would result in "substantial penalties, including but not limited to default."

Following the conference, Signature notified the parties that the arbitration hearing would commence on October 8, 2024, and requested payment of additional arbitration fees by September 10, 2024. The arbitration hearing was later rescheduled for November 11, 2024.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

3

When plaintiff failed to pay the additional arbitration fees by September 10, 2024, "Signature made repeated efforts to collect the payment. This include[d] telephone calls and at least five different emails to [plaintiff's] counsel. [Plaintiff's] counsel [did] not respond[ ] to any of those telephone calls or emails. . . . [Plaintiff's] counsel . . . also ignored [defendants'] efforts to reach out and communicate in advance of the request for default." Accordingly, on October 23, 2024, the arbitrator issued an order finding plaintiff in default and setting a "default prove-up" on November 11, 2024, the date previously scheduled for the arbitration hearing.

On October 29, 2024, plaintiff's counsel sent a letter to the arbitrator requesting reconsideration of the default in which plaintiff "acknowledge[d] that the latest invoice provided by Signature . . . had not been paid but he simply [did] not [have] the necessary funds. He was unaware of the ramifications of not timely paying the invoice." That same day, defendants sent a letter in opposition to the request. On November 1, 2024, the arbitrator issued a further ruling, denying plaintiff's request to reconsider the default, but providing that, "if [plaintiff] [paid] his share of the fees by remitting payment of the outstanding bill by the close of business [that day], he [would] . . . preserve his right to be present on Zoom during the default prove-up, to cross-examine any witnesses who testify at the hearing, and to submit briefing of his own on the issues. Regardless of whether [plaintiff] submit[ted] payment, he [would] not, however, be permitted to testify or present any affirmative evidence at the hearing."

Prior to the November 11, 2024, hearing, defendants submitted "a default prove-up package in lieu of live testimony."

After the deadline for submission of it had passed, plaintiff submitted a brief which the arbitrator considered over defendants' objections. Plaintiff argued, among other things, that the agreement's confidentiality provision violated section 1001 which prohibits "a provision within a settlement agreement that prevents or restricts the disclosure of factual information related to" claims for sexual assault, sexual harassment, workplace and other harassment, and discrimination." (§ 1001, subd. (a)(1)–(4).)

Following the default prove-up hearing, the arbitrator issued an award finding that defendants had established multiple violations of the agreement, independent of any violations of the confidentiality provision, including multiple violations of the no contact provision. Accordingly, the arbitrator issued the following award: (1) the amount of $280,938.43 remaining in trust and due to be disbursed to plaintiff under the agreement was deemed forfeited and the trustee was ordered instead to pay that amount forthwith to the domestic violence program of the child and family center in Santa Clarita; (2) based on at least three separate violations of the settlement agreement established by defendants, plaintiff was ordered to pay them $15,000 per violation, for a total of $45,000 in liquidated damages; and (3) plaintiff was ordered to pay defendants' arbitration costs in the amount of $15,000 and attorney fees in the amount of $30,400.80.

On November 21, 2024, plaintiff filed an objection to the award. On November 22, 2024, defendants filed a response. The arbitrator "declined to rule on the [o]bjection," and instead found that the award was "binding, final and [nonappealable]."

5

C.    *Petitions to Confirm and Vacate*

On January 29, 2025, plaintiff filed a petition to vacate the arbitration award, asserting two grounds in support—the award was "obtained by corruption, fraud, or other unfair means" and "the misconduct of [the] neutral arbitrator substantially prejudiced [plaintiff's] rights."  In support of the petition, plaintiff attached a copy of the agreement and the award but did not submit any additional evidence.[2]

On February 3, 2025, defendants filed a petition to confirm the award, supported by their counsel's declaration and exhibits detailing the procedural history of the arbitration proceeding.  On March 6, 2025, they also filed objections and an opposition to plaintiff's "petition to vacate," including additional exhibits providing further details about the arbitration proceedings.

On March 20, 2025, the trial court held a hearing on the "[m]otion to [v]acate or [a]lter [the a]rbitration [a]ward" and petition to confirm the award.  Plaintiff did not appear at the hearing.  Following the hearing, the court issued a minute order ruling on plaintiff's motion and defendants' petition.  The court rejected plaintiff's assertion that the award was procured by fraud explaining, plaintiff "contends [defendants] used unverified evidence, tampered with witnesses, and used retaliatory tactics, such as recruiting [plaintiff's] ex-girlfriend to file a frivolous restraining order and fabricate nondisclosure breaches, to procure the [a]rbitration [a]ward.  These are serious charges.

---

[2]    The case register reflects that on the same date, plaintiff filed a "Motion to Vacate or Alter Arbitration Award."  Plaintiff, however, did not designate that motion as part of the record on appeal.

6

However, [plaintiff] does not support any of these charges with admissible evidence.  Indeed, as the [defendants] point out in their [o]bjection [and o]pposition, none of [plaintiff's] exhibits are authenticated.  (See Pet. to Vacate [*sic*], Exs. 1–33.)[3]  In short, the information and allegations lack foundation."

On plaintiff's claim of arbitrator misconduct, the trial court reasoned, "[Plaintiff] next argues the [a]rbitrator did not honor his promise to allow [plaintiff's] attorney to cross-examine witnesses at the default prove-up hearing and issued the [award] without the promised procedural safeguards.  [Plaintiff] further argues the [a]rbitrator's late arrival to the hearing reflects a lack of impartiality and due process.  [¶]  [Plaintiff's] arguments fall short.  Although it is undisputed the [a]rbitrator arrived late to the hearing, and more, [plaintiff's] counsel did not cross-examine any witnesses, [plaintiff] fails to show whether [defendants] called any witnesses in support of the default prove-up in the first place.  Indeed, as [plaintiff] admits, no hearing was held.  The arbitrator proceeded by way of a default.  While [plaintiff] may have been permitted 'to cross-examine any witnesses who testify at the hearing, and to submit briefing of his own on the issues,' . . . no hearing was held, no witnesses testified.  [¶]  Further, it is undisputed the [a]rbitrator conferred with counsel on November 11, 2024[,] and that [plaintiff] submitted a late brief which the [a]rbitrator nonetheless considered in issuing the [award].  . . .  [Plaintiff's] participation in the arbitration was consistent with the [a]rbitrator's order.  . . . [He] does not show

---

[3]     Although the ruling refers to 33 exhibits in support of the petition to vacate, plaintiff's January 29, 2025, petition, which is part of our record on appeal, included only the agreement and award.

7

the [a]rbitrator acted improperly or violated his due process rights."

Finally, on the petition to confirm, the trial court ruled that "[t]he procedural requirements of . . . section 1285.4 have been satisfied. In moving to confirm the [award], [defendants] included a copy of the agreement to arbitrate . . . and copy of the [award] issued by [the a]rbitrator . . . . Further, the court has considered [plaintiff's] challenges to the [award] which are set forth in [p]laintiff's [p]etition to [v]acate [*sic*]."

D.     *Motion for Reconsideration*

On April 1, 2025, plaintiff filed a motion for reconsideration under section 1008, subdivision (a) "on the grounds that newly authenticated evidence was not properly considered in the prior ruling." Plaintiff argued the trial court failed to consider key evidence due to authentication issues and that the attached "newly authenticated" evidence would show that (1) "[t]he arbitration provider was misled by [defendants], who concealed key evidence;" (2) plaintiff "was financially disadvantaged and forced into default;" and (3) defendants "presented misleading evidence at a default arbitration hearing without [plaintiff] present." His declaration identified 14 exhibits attached to an exhibit list.

On April 21, 2025, plaintiff filed a supplemental declaration asserting facts that he claimed would show "the arbitration award was procured through fraud, perjury, use of dismissed evidence, and the suppression of [his] rights as a harassment survivor." The declaration identified eight additional

8

exhibits attached to a supplemental exhibit list without providing other information authenticating them.

On April 24, 2025, defendants filed objections and an opposition to the reconsideration motion. On April 29, 2025, they filed objections to plaintiff's supplemental declaration.

On May 1, 2025, plaintiff filed responses to defendants' objections to his evidence.

At the May 8, 2025, hearing on the reconsideration motion, plaintiff again failed to appear. The court took the matter under submission.

On May 14, 2025, the trial court issued a minute order denying the motion. The court based its ruling on the following grounds: "First and foremost, contrary to [plaintiff's] representations, he has not provided properly authenticated evidence. (See Evid. Code, §§ 1400, 1401.) [Plaintiff's] motion appears nearly identical to his [p]etition to [v]acate [*sic*]. [¶] Second, [plaintiff] does not provide any discussion or explanation elucidating what should be considered new or different facts, circumstances, or law that require reconsideration of the court's March 20, 2025 order. (. . . § 1008, subd. (a).) [¶] Third, even if [plaintiff] had properly authenticated the evidence (which he did not), [plaintiff] does not explain why he could not have submitted such evidence in support of his [p]etition to [v]acate [*sic*]. [¶] Fourth, [plaintiff] is mistaken that the court denied the [p]etition to [v]acate [*sic*] and granted the [p]etition to [c]onfirm solely on [plaintiff's] failure to provide admissible evidence. Not so. The court noted [plaintiff's] admission that his default was entered in the arbitration proceedings for multiple failures to pay timely his arbitration fees, that the [a]rbitrator considered [plaintiff's] late-filled [*sic*] brief and nonetheless found in favor of

9

[defendants]. . . . Based on these facts, the court found [plaintiff] failed to show the [award] was procured by arbitrator misconduct. [Plaintiff] does not address this portion of the court's order. Reconsideration is not warranted."

E.   *Judgment*

On May 14, 2025, the trial court entered a judgment forfeiting the $280,938.43 in funds remaining in the settlement trust and ordering them paid to the domestic violence program, awarding defendants $45,000 in liquidated damages, and awarding them $15,000 in arbitration costs and $30,400.80 in attorney fees and additional costs, for a total monetary award of $90,400.80.

On May 23, 2025, plaintiff filed a notice of appeal.

## III.   DISCUSSION

A.   *Legal Principles and Standard of Review*

"A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) An appellant must affirmatively establish error by an adequate record. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.) In the absence of a proper record on appeal, the appealable judgment or order is presumed correct and must be affirmed. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296.)

10

"Generally, courts cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial injustice to the parties. ([*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 6, 28 (*Moncharsh*)].)" (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916, (*Richey*).) "An award may be vacated only for fraud, corruption, misconduct, an undisclosed conflict, or similar 'circumstances involving serious problems with the award itself, or with the fairness of the arbitration process.' (*Moncharsh*, [*supra*, 3 Cal.4th] at p. 12; see § 1286.2, subd. (a).)" (*Heimlich v. Shivji* (2019) 7 Cal.5th 350, 367 (*Heimlich*).)

"The exceptions to the limits on review of awards protect against error that is so egregious as to constitute misconduct or so profound as to render the process unfair. . . . '"The statutory provisions for [review of an arbitration award] are manifestly for the sole purpose of preventing the misuse of the proceeding, where corruption, fraud, misconduct, gross error, or mistake has been carried into the award to the substantial prejudice of a party to the proceeding."' [Citation.]" (*Heimlich*, *supra*, 7 Cal.5th at p. 368, fn. omitted.)

An appellate court reviews a trial court's ruling on a request to vacate an award de novo, giving deference to the award.[4] (See *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9

---

[4] Defendants contend that, in the agreement's arbitration provision, plaintiff waived his right to appeal from the judgment entered on the arbitration award. We disagree.

The provision here stated that the arbitration award would be "binding, final, and non-appealable." But there is no language explicitly providing that plaintiff waived his rights to appeal from the judgment entered on the award on the limited statutory grounds for vacating the award. Absent such express language,

Cal.4th 362, 375–376, fn. 9; *O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1055–1056.) If there are disputed issues of fact before the trial court, the appellate court accepts the trial court's resolution of disputes if supported by substantial evidence. (See *Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44, 55–56.) The appellate court also presumes the trial court found every fact and drew the permissible inferences to support the trial court's determination. (*Fininen v. Barlow* (2006) 142 Cal.App.4th 185, 189–190.)

---

courts do not find waiver. "California courts enforce contractual provisions waiving a party's right to appeal a judgment on an arbitration award. [Citations.] But they do so only if this intent is 'clear and explicit.' [Citations.] [¶] Reasonably read, the cited language of the parties' arbitration agreement does not show [the appellant] waived his right to appeal on the limited judicial review grounds provided in the arbitration statutes. '[G]enerally, a contract provision stating that arbitration is "non-appealable" signifies that the parties to the contract may not appeal the merits of the arbitration; not that the parties agree to waive a right to appeal the . . . judgment confirming or vacating the arbitration decision.' [Citation.] This principle applies here. Although the parties unambiguously gave up their rights to litigate the matter in a judicial forum, including their *judicial* appellate rights, they did not explicitly waive their rights to the limited judicial review provided under the arbitration statutes, which encompass the right to appeal a final judgment on these matters. (See § 1294.)" (*Emerald Aero, LLC v. Kaplan* (2017) 9 Cal.App.5th 1125, 1144–1145.)

B.     *Ruling on Petition to Vacate*

1.     <u>Challenges to Merits of Award</u>

Plaintiff raises several arguments concerning the enforceability of the contract provisions on which defendants predicated their claims, including challenges based on unconscionability, illegality, public policy, and freedom of expression.

We reject plaintiff's merits-based arguments for at least two reasons.  First, and as defendants note, there is no record of plaintiff having raised these arguments in the trial court.  ""As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal . . . .  This rule is based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal." [Citation.]'" (*Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548.)  By failing to raise his arguments in the trial court, plaintiff has forfeited them on appeal.  (*Ibid.*)

Second, even if plaintiff had not forfeited his arguments on appeal, we would reject them because as explained, "[a] court's power to correct or vacate an erroneous arbitration award is closely circumscribed." (*Heimlich*, *supra*, 7 Cal.5th at p. 367.)  "'[B]y voluntarily submitting to arbitration, the parties have agreed to bear the risk [of uncorrectable legal or factual error] in return for a quick, inexpensive, and conclusive resolution to their dispute." (*Moncharsh*, [*supra*, 3 Cal.4th] at p. 11.)" (*Ibid.*)  On an appeal from a ruling denying a petition to vacate an arbitration award, "[w]e cannot review the merits of the controversy, the validity of the arbitrator's reasoning, or the sufficiency of the

13

evidence supporting an arbitrator's award." (*Luster v. Collins* (1993) 15 Cal.App.4th 1338, 1344.)

Unless the arbitration provision contains an express and unambiguous limitation on the arbitrator's powers, "an arbitrator has the authority to find the facts, interpret the contract, and award any relief rationally related to his or her factual findings and contractual interpretation." (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1182.) "'Inherent in that power is the possibility the arbitrator may err in deciding some aspect of the case. Arbitrators do not ordinarily exceed their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact, and arbitral awards may not ordinarily be vacated because of such error, for "'[t]he arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement.'" [Citations.]' [Citation.]" (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1360–1361.) We therefore reject plaintiff's challenges to the merits of the arbitration award.

2. Fraud and Misconduct

Plaintiff also contends that the arbitration award was procured by fraud and that the arbitrator engaged in prejudicial misconduct. According to plaintiff, "[b]y submitting transcripts from a dismissed [domestic violence restraining order] case—while concealing the dismissal—[defendants] misled the arbitrator. That constitutes fraud by concealment." Plaintiff also contends that the arbitrator "committed serious misconduct. He kept [plaintiff] in default despite payment of required fees, barred him from testifying or presenting evidence, [and]

14

considered [defendants'] private submissions that were never disclosed to [plaintiff] . . . ."

The record on appeal does not support plaintiff's factual contentions. Specifically, the record on appeal does not include the exhibits that plaintiff purportedly submitted in connection with his motion to vacate the arbitration award. Thus, there is no evidentiary support for plaintiff's assertion that defendants misled the arbitrator by submitting transcripts from a dismissed case; that the arbitrator "kept [plaintiff] in default despite payment of required fees;" or that the arbitrator "considered [defendants'] private submissions that were never disclosed to [plaintiff] . . . ." Given the record on appeal, we presume the court's order was correct. (*Maria P. v. Riles*, *supra*, 43 Cal.3d at pp. 1295–1296.)

Although the record on appeal demonstrates that the arbitrator ruled plaintiff could not testify or present evidence at the hearing given his failure to pay the arbitration fees, plaintiff does not articulate how plaintiff's rights were substantially prejudiced by the arbitrator's ruling. (See § 1286.2, subd. (a)(5); *Hall v. Superior Court* (1993) 18 Cal.App.4th 427, 439.) He therefore cannot demonstrate the trial court erred in denying his petition to vacate the award.[5]

---

[5] Other than his arguments in support of his motion to vacate, plaintiff did not separately oppose the petition to confirm in the trial court, and he makes no separate assertion of error on appeal. We therefore affirm the order confirming the award for the same reasons we affirm the order denying the petition to vacate.

15

C.    *Ruling on Reconsideration Motion*

Plaintiff also challenges the trial court's denial of his motion to reconsider its ruling on the petition to vacate. According to plaintiff, "[t]he trial court denied [plaintiff's m]otion to [v]acate and [m]otion for [r]econsideration on the ground that '100% of [plaintiff's] evidence is unauthentic.' . . . [¶]  That ruling is refuted by the appellate record now before this [c]ourt. Every category of evidence is either:  [¶]  An official court judgment or agency determination;  [¶]  A certified exhibit attached to the [s]upersedes [s]tay filing already in this [c]ourt's docket; or  [¶]  A submission from [defendants'] own counsel.  [¶] Together, the [j]udicial [n]otice records[6] and [s]upersedes [s]tay exhibits conclusively establish authenticity and eliminate the evidentiary barrier relied upon by the trial court." (Boldface omitted.)

"Section 1008, subdivision (a) requires that a motion for reconsideration be based on new or different facts, circumstances, or law.  A party seeking reconsideration also must provide a satisfactory explanation for the failure to produce the evidence at an earlier time.  [Citation.]  A trial court's ruling on a motion for reconsideration is reviewed under the abuse of discretion

---

6    In his opening brief, plaintiff requests that we take judicial notice of three documents.  We deny the request for failure to comply with California Rules of Court, rule 8.252(a) which requires, among other things, a separate motion attaching copies of the documents subject to the request.  Further, we deny plaintiff's December 23, 2025, motion to augment the record with a copy of defendants' August 21, 2024, arbitration brief as there is no indication that document was submitted to the trial court.

16

standard.  [Citation.]" (*New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212.)

We find no abuse of discretion.  First, plaintiff did not present an explanation in the trial court as to why he did not earlier produce the purportedly new evidence.  Moreover, and contrary to plaintiff's assertion, much of the evidence submitted by plaintiff lacked authentication.  A writing must be authenticated before it is received in evidence.  (Evid. Code, § 1401, subd. (a).)  "Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law."  (Evid. Code, § 1400.)  Although plaintiff submitted two declarations that referenced documents included in separate exhibit lists, those declarations did not adequately authentic the exhibits.  We therefore find no abuse of discretion in the court's denial of the reconsideration motion.

## IV.   DISPOSITION

The orders denying plaintiff's petition to vacate the award and granting defendants' petition to confirm it are affirmed. Defendants are awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

HOFFSTADT, P. J.

MOOR, J.