Filed 2/17/26  Gilberg v. Power Architects Corp. CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| LARRY GILBERG,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>POWER ARCHITECTS<br>CORPORATION,<br><br>    Defendant and Respondent. | H052611<br>(Santa Clara County<br> Super. Ct. No. 20CV368701) |

Larry Gilberg, Alexander Kolchinsky, Alexander Mednik, and Mark Kesel all hold shares in Power Architects Corporation.  The five parties arbitrated a complex dispute concerning the company.  The arbitration resulted in an award that required Gilberg and Kolchinsky to pay Power Architects, declared that they held fewer shares than they claimed, and rejected their affirmative claims.  Gilberg and Kolchinsky separately moved to vacate or correct the award and now separately appeal the trial court's judgment confirming the award.  Here, we will affirm the judgment against Gilberg.

## I.     BACKGROUND

### A.     *Commencement and Consolidation of Arbitration*

In 2020, Gilberg commenced two actions against Power Architects, Mednik, and Kesel.  In the first, Gilberg alleged that he was unlawfully terminated from Power Architects.  In the second, Gilberg and Kolchinsky alleged claims for a declaration of

shareholder rights, removal of directors, and injunctive relief. Gilberg withdrew his claims from the second action and Kolchinsky amended the complaint to assert only a claim for declaratory relief concerning his shareholder status.

Power Architects, Mednik, and Kesel successfully moved to compel Gilberg to arbitrate his claims in the first action. Later, Mednik and Kesel successfully moved to compel Kolchinsky to arbitrate his claims in the second action.

Three separate arbitration demands were submitted, one by Mednik and Kesel against Gilberg and Kolchinsky, one by Power Architects against Gilberg and Kolchinsky, and one by Gilberg against Power Architects, Mednik, and Kesel. The three demands generated a consolidated arbitration. After being compelled to arbitrate, Kolchinsky appeared in the arbitration as a respondent and additional counterclaimant. The arbitration was conducted by a three-judge panel of the American Arbitration Association (AAA).

## B.    *AAA's Findings and Award*[1]

Power Architects sells configurable and custom power supplies. Power Architects was founded by Gilberg and Mednik. Kolchinsky, Gilberg's close friend, helped set up the business. Power Architects was first incorporated in Delaware in 1997 but reincorporated in California in 1998.

Commencing in 1998, Gilberg, Mednik, and Kesel were all members of the Power Architects board. Gilberg was also the company's Chief Executive Officer (CEO) and secretary from 1998 until February 2019, when Mednik and Kesel voted to remove Gilberg as a director and eliminated the CEO position. Mednik was the company's president from its founding until December 2019. Kolchinsky served as a director to represent Gilberg's interests from the date of Gilberg's removal until 2021. In 2020,

---

[1] We draw this background from the AAA award.

Power Architects reinstated the CEO position and appointed Vlad Pystin in that role. Pystin was not a shareholder. In 2021, Pystin replaced Kolchinsky on the board.

Three successive shareholders' agreements were entered in 1998, the " 'May Agreement,' " " 'July Agreement,' " and " 'August Agreement.' " The May Agreement, signed by Gilberg, Mednik, and Kolchinsky, allocated 45,000 shares each to Gilberg and Mednik and 10,000 shares to Kolchinsky. It appointed Gilberg as CEO, Mednik as president, and Kolchinsky as vice-president and secretary. The July Agreement, entered in conjunction with receipt of funding from three individuals comprising an investor group, identified five shareholders: Gilberg with 55,000 shares, Mednik with 45,000 shares, Kesel with 15,300 shares, Oleg Sagodeev with 15,300 shares, and Boris Kesil with 3,400 shares. The five identified shareholders signed the July Agreement. Kolchinsky was not mentioned in the July Agreement and did not sign it. The August Agreement was executed by the five signatories to the July Agreement.

The August Agreement was substantially the same as the July Agreement, except that Gilberg and Mednik each were allocated 50,000 shares. The August Agreement made Gilberg and Mednik officers—for "as long as [each] remain[ed] a shareholder and perform[ed] faithfully, efficiently, and competently for the Corporation." If they "cease[d] to be a shareholder in the Corporation" they were required to submit their "resignation as an officer when [they] transfer[ed] [their] shares." As for governance of Power Architects, the August Agreement specified that "[t]he Shareholders shall control the Corporation and all its affairs and shall have proportionate rights in the management and conduct of Corporation investments and activities." Although "[t]he CEO and the President shall be responsible for the day-to-day management and ministerial acts of the Corporation," the August Agreement provided that "major decisions should be decided by majority vote." But "if any action [is] taken at a meeting of the shareholders or directors of the Corporation by a vote of less than (76%) of the shareholders or directors,

3

as the case may be, the dissenting shareholder may require the Corporation or directors within 90 days either to" rescind the action or purchase the shares owned by the dissenter.

Gilberg was responsible for Power Architects' financial matters. In this capacity, "he actively engaged in schemes to avoid taxes and generate funds for himself and family members." In that capacity, Gilberg unilaterally sold his shares back to Power Architects at self-determined prices but continued to distribute profits to himself as if he had retained all his shares. He did this without board knowledge or approval.

In a lengthy interim award addressing numerous claims and counterclaims, AAA ruled that: (1) Gilberg retained only 2,445 shares of Power Architects stock; (2) Power Architects sustained over $1.4 million in compensatory damages based on three schemes: (a) Gilberg took dividends as though he had sold no shares back to Power Architects; (b) he inflated his own dividends by adding an unauthorized bonus; and (c) he caused Power Architects to pay his family members for work they did not perform; and (3) Power Architects was entitled to treble damages under Penal Code section 496, subdivision (c), bringing the total to almost $4.3 million.

In the final award, AAA added awards for attorney fees, costs, arbitrator compensation, and AAA administrative fees. The total award is nearly $5.3 million.

AAA also ordered Kolchinsky to pay Power Architects $35,786 in costs.

C.    *Motions to Vacate and Appeal*

After arbitration, the two trial court cases were consolidated. Power Architects moved to confirm the AAA award. Gilberg and Kolchinsky separately moved to vacate and correct the awards. In a single order, the trial court granted Power Architects' motion and denied the motions filed by Gilberg and Kolchinsky. The trial court entered judgment declaring that Gilberg retained only 2,445 Power Architects shares and awarding Power Architects almost $5.3 million from Gilberg, including prejudgment interest. Gilberg timely appealed.

4

## II.    DISCUSSION

In the trial court, Gilberg challenged the arbitration award under Code of Civil Procedure section 1286.2, subdivisions (a)(4) and (5), arguing that AAA failed to follow the August Agreement and wrongfully excluded material evidence.[2]  Specifically, Gilberg claimed that:  (1) AAA did not give effect to a provision in the August Agreement that prohibited Gilberg from selling his shares, which in his view required AAA to treat Gilberg's sales as if they did not reduce his shareholdings; (2) AAA refused to hear testimony from David Lee on the legal effect of the same provision; (3) AAA invoked Penal Code section 496, subdivision (c) to award treble damages for payments to Gilberg's wife and mother when, Gilberg contends, Gilberg and Mednik were jointly responsible for managing corporate affairs under the August Agreement; and (4) AAA invoked Penal Code section 496, subdivision (c) to require Gilberg to pay attorney fees when, Gilberg contends, he should have had no predicate liability (or should have shared with Mednik responsibility for payments to Gilberg's wife and mother).  On appeal, Gilberg now also challenges (1) Power Architects' authority to participate in the arbitration; (2) Kesel's status as a shareholder; and (3) AAA's rejection of certain of his arguments in defense of the claims against him.  Even if we consider the arguments Gilberg failed to raise in the trial court, Gilberg has failed to establish a basis to vacate or correct the award.[3]  So we will affirm the judgment.

---

[2] Undesignated statutory references are to the Code of Civil Procedure.

[3] We do not reach Power Architects' contention that many of Gilberg's appellate arguments are forfeited on appeal because they were not presented to the trial court or Gilberg's various arguments against a finding of forfeiture here.  To the extent Gilberg has raised new contentions in his appellate reply brief, however, we need not consider them because he has deprived Power Architects of an opportunity to respond.  (See *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 158.)

## A.    *Legal Principles*

Courts generally "cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial injustice to the parties." (*Sargon Enterprises, Inc. v. Browne George Ross LLP* (2017) 15 Cal.App.5th 749, 763.)  Judicial review of private arbitration awards is limited to enumerated statutory grounds to vacate or correct the award.  (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 28.)  Gilberg invokes section 1286.2's provision for vacatur when "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."  (§ 1286.2, subd. (a)(4).)

" ' "[A]rbitrators do not ordinarily exceed their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact." ' " (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 917.)  "Arbitrators may exceed their powers by issuing an award that violates a party's unwaivable statutory rights or that contravenes an explicit legislative expression of public policy" (*id*. at p. 916) or where public policy renders the entire contract containing the arbitration agreement unenforceable (*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 73, 80, 87).

While the scope of judicial review of an arbitration award is narrow, our review of the trial court's order confirming the arbitration award is de novo.  (See *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9 (*Advanced Micro Devices*).)

## B.    *Gilberg's Jurisdictional Motion*

Beyond his appellate briefs, Gilberg has moved this court to determine "jurisdiction" before resolving other issues.  Although reviewing courts must be satisfied of their own jurisdiction before proceeding to the merits (see *Steel Co. v. Citizens for a Better Environment* (1998) 523 U.S. 83, 94–95; *Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 339), Gilberg challenges neither the trial court's jurisdiction to review an arbitration award nor our jurisdiction to review the trial court's order.  Indeed,

it is our jurisdiction he is invoking, as the appellant, much as he sought the trial court's jurisdiction to review the arbitration award. Rather, Gilberg's motion is an unauthorized supplemental brief on the merits of his argument that the arbitration award was in excess of AAA's powers.[4] The motion is denied.

## C. *Gilberg's Requests for Judicial Notice*

Gilberg filed in this court six requests for judicial notice, which we grant only in part.[5]

Under Evidence Code section 451, we take judicial notice of the existence and content of documents filed in the trial court in this case before judgment that are not otherwise in the appellate record.[6] (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3; see also *Estate of Sanchez* (2023) 95 Cal.App.5th 331, 336, fn. 5 [explaining that courts have "discretion to augment the record with materials that were before the trial court when it issued the order on appeal"].) But our judicial notice is limited to the existence of each document in the court file and does not extend to the truth of hearsay statements within those documents. (*Lockley v. Law Office of Cantrell,*

[4] Gilberg's request for permission to reply in support of his motion to determine jurisdiction is denied.

[5] Gilberg filed his first request for judicial notice with his opening merits brief. He filed five more requests before Power Architects filed its respondent's brief, the last on the day before the respondent's brief was filed. We deferred ruling on all six requests for consideration with the merits. One of his requests incorporated a request for judicial notice filed by Kolchinsky in Kolchinsky's separate appeal. Gilberg's unopposed motion to strike the untimely oppositions to the first four requests for judicial notice is granted.

[6] Our grant of judicial notice is limited to: (1) Excerpts from Gilberg's July 24, 2020 complaint; (2) the October 5, 2020 Pystin declaration; (3) a November 9, 2020 case management statement filed in this action; (4) a November 25, 2020 reply brief filed in support of the petition to compel arbitration; (5) excerpts from a request for judicial notice Kolchinsky filed on September 10, 2021 in connection with his opposition to the motion to compel arbitration in the consolidated case; (6) excerpts from the April 4, 2024 Gilberg declaration; and (7) excerpts from the May 21, 2024 Kolchinsky declaration.

*Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882.) Nor will we take judicial notice of evidence not presented to the trial court, because Gilberg has not shown any exceptional circumstance that would warrant our taking so extraordinary a measure. (See *In re K.M.* (2015) 242 Cal.App.4th 450, 456.) The requests are otherwise denied.[7]

**D.** ***The Scope of Arbitration and the Effect of the Order Compelling Arbitration***

The trial court compelled Gilberg to arbitrate under the August Agreement.[8] Under that agreement, "[s]hould any dispute arise between any one or more of the parties to this agreement as to their rights under any provisions of this agreement, the parties . . . agree to refer such dispute to [AAA], whose decision on the questions shall be binding on the parties and shall be without appeal." The trial court ruled that Gilberg's claim for breach of the August Agreement fell within the scope of this arbitration provision. The trial court also compelled arbitration of Gilberg's employment claims because the rights he asserted "have 'their roots in' " the August Agreement's terms, by which Gilberg was appointed a corporate officer "as long as he remains a shareholder and 'performs faithfully, efficiently and competently for the Corporation.' " (See generally *Ahern v. Asset Management Consultants, Inc.* (2022) 74 Cal.App.5th 675, 687 [explaining that courts ruling on arbitration petitions assess "whether an agreement to arbitrate exists [citations] and, if so, whether the parties' dispute falls within the scope of that agreement"].)

---

[7] Beyond documents never presented in the trial court, Gilberg's requests for judicial notice also extend to various authorities and facts derived from the appellate record, including of documents already in the appellate record. We thus deny these requests as at best superfluous and, alternatively, as unauthorized supplemental briefing on the merits.

[8] Gilberg states in passing that the order compelling him to arbitrate is reviewable in an appeal from the final judgment. But we discern in his brief no contention that the trial court erred in finding an agreement to arbitrate that encompassed Gilberg's claims or in ordering Gilberg to arbitrate his claims.

The trial court reserved for arbitral determination the merits of Gilberg's claims under the August Agreement. (See *Heimlich v. Shivji* (2019) 7 Cal.5th 350, 358 (*Heimlich*) [" 'Absent an express and unambiguous limitation in the contract or the submission to arbitration, an arbitrator has the authority to find the facts, interpret the contract, and award any relief rationally related to his or her factual findings and contractual interpretation' "].) Gilberg misconstrues the order in broadly asserting that the trial court in compelling arbitration under the dispute resolution provision of the August Agreement rendered a binding determination of his substantive rights under the August Agreement's other terms.[9]

The court expressed no opinion on the viability of Gilberg's claims under the August Agreement. In ruling that Gilberg's statutory claims were arbitrable, the trial court did explain that Gilberg did not waive his substantive statutory rights under the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.) by agreeing to arbitrate them; he merely agreed to have those claims resolved in an arbitral forum. Gilberg interprets this as a "promise[]" that his unspecified statutory rights would be protected, which in his view justifies a more muscular judicial review of all his substantive claims. To be sure, for public policy reasons, " 'when unwaivable statutory rights are at stake, . . . review must be " 'sufficient to ensure that arbitrators comply with the requirements of the statute.' " ' " (*Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 679.) But none of Gilberg's appellate contentions turn on

_____

[9] We also reject Gilberg's reliance on an October 2021 stipulation that he neither mentioned in his opening brief here nor put before the trial court when it issued its judgment. Gilberg contends that the stipulation entitles him to heightened judicial review of the arbitration award. (See *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1340 [California law permits parties to contract for heightened judicial review of arbitration awards].) Even if it were proper for us to take judicial notice of a document the trial court had no opportunity to consider, nothing in the stipulation— reserving any right he then retained to appeal the order compelling arbitration—suggests that the parties stipulated to heightened judicial review.

unwaivable statutory rights under FEHA. We cannot identify a public policy reason to deviate from the ordinary principles governing judicial review of arbitration awards in assessing Gilberg's contentions.

## E.     *Power Architects' Authority to Prosecute Arbitration*

Gilberg contends that AAA exceeded its authority by arbitrating a dispute in which Power Architects lacked authority either to prosecute its claims or to oppose Gilberg's. In Gilberg's view, the August Agreement prevented Pystin from serving as CEO because Pystin was not a shareholder; Pystin in turn lacked authority to retain Martinovsky to represent Power Architects in arbitration. Alternatively, if Pystin's appointment could have been approved by a supermajority of the shareholders, Gilberg asserts that Kesel lost his shares as a matter of law, foreclosing the 76 percent majority Gilberg maintains was required for appointment of a CEO and authorizing the arbitration itself. The record, however, lacks any indication that Gilberg challenged in the trial court the authority of Power Architects to proceed—either in opposing the petition to compel arbitration or in seeking to vacate or correct the award.

And even if Gilberg's contention were properly preserved for our review, AAA resolved the premises on which he bases them. AAA rejected Gilberg's interpretation of the August Agreement, ruling that the provision conditioning Gilberg's or Mednik's service as officers on their continued shareholding did "not prohibit the appointment of non-shareholders as officers" and that Power Architects thus validly appointed Pystin, who validly hired Martinovsky.[10] Gilberg's contentions regarding his and Kesel's respective shareholdings are likewise merely invitations to relitigate the merits of issues properly resolved in arbitration. AAA's rulings on these issues rest on factual and legal determinations, including contractual interpretation and remedial decisions, that are

_____

[10] Given Gilberg's forfeiture, we will not recapitulate here our assessment of the functionally identical claim in *Kolchinsky v. Power Architects* (Feb. 17, 2026, H052610) (nonpub. opn.), filed concurrently herewith.

10

within AAA's authority.  (See *Heimlich*, *supra*, 7 Cal.5th at p. 358.)  So Gilberg's contentions do not supply a basis for a court to vacate the arbitration award.

## F.    *Gilberg's Stock Buybacks*

AAA found that "Gilberg used his position in the company to take excessive compensation through unauthorized stock buybacks at inflated prices, keeping the money, and still exercising dominion and control over the stock, voting the shares as though they had not been sold, and paying himself dividends attributable to those sold shares as well as bonuses."  Gilberg argues that any award of associated damages exceeded AAA's power because it conflicted with provisions of the August Agreement, which Gilberg maintains rendered any buybacks void rather than voidable.  We disagree.

"The principle of arbitral finality, the practical demands of deciding on an appropriate remedy for breach, and the prior holdings of this court all dictate that arbitrators, unless expressly restricted by the agreement or the submission to arbitration, have substantial discretion to determine the scope of their contractual authority to fashion remedies, and that judicial review of their awards must be correspondingly narrow and deferential."  (*Advanced Micro Devices*, *supra*, 9 Cal.4th at p. 376; see also *Heimlich*, *supra*, 7 Cal.5th at p. 358.)

Gilberg identifies nothing in the August Agreement that would narrow AAA's discretion to fashion an appropriate remedy for his breach of the provision prohibiting him from selling his shares back to Power Architects without supermajority approval.  Nor does he identify any principle that would preclude Power Architects from effectively standing on the sales and suing for damages.

Gilberg would have us rely on the provision he violated to unwind not only AAA's remedy but the violation AAA found he committed:  "No Shareholder shall be entitled to withdraw any part of his or its capital (prorated per share) or to receive any distribution from the Corporation except as specifically provided herein."  He urges us in effect to spare him the remedy by unwinding the violation, reasoning that acts in excess

11

of his authority should have no effect, including on him. But the provision Gilberg invokes limits only what Gilberg may permissibly do, not what remedies an arbitrator may impose should he exceed that limitation.

Gilberg protests that his treatment represents an unfair deviation from AAA's invalidation of a share transfer between Mednik and his wife—a transfer that *Gilberg* had instigated to prevent Mednik from voting those shares. AAA found that Mednik had never authorized Power Architects to transfer Mednik's shares to his wife. AAA's decision to thwart Gilberg's attempt to divest Mednik of shares does not limit AAA's discretion to remedy the harm caused by Gilberg's phantom sales of his own shares by upholding the sales and awarding damages.

Gilberg maintains that he could not have reduced his shareholdings by selling his shares back to Power Architects because there was no vote to permit him to do reduce his shareholdings—and he himself would have vetoed any attempt to reduce his shareholdings. We take as undisputed that Gilberg would have abstained from violating the August Agreement had he anticipated the consequences. This does nothing, however, to change AAA's factual finding that Gilberg did sell his shares back to the company without authorization. AAA had authority to fashion an appropriate remedy.

AAA's exclusion of what Gilberg now maintains was David Lee's expert opinion to the contrary does not alter this conclusion. AAA was not required to permit Lee to render a legal opinion.[11] (See *City of Rocklin v. Legacy Family Adventures-Rocklin, LLC* (2022) 86 Cal.App.5th 713, 728 ["an expert is not permitted to give an opinion on questions of law or legal conclusions"].)

_____

[11] Gilberg contends that the exclusion of Lee's opinion is reviewable under section 1286.2, subdivision (a)(5), which permits vacatur where a party's rights are substantially prejudiced by the arbitrators' refusal "to hear evidence material to the controversy." Even if the statute provides a vehicle to review this evidentiary ruling (cf. *Heimlich, supra,* 7 Cal.5th at p. 368), Gilberg has not shown that the exclusion was inappropriate.

Nor has Gilberg supplied any basis to disturb AAA's rejection of his contention that Mednik and Kesel ratified his decision to "sell" his shares to Power Architects without surrendering those shares.

## G.    *AAA's Determination of Other Issues*

Beyond his challenges to the arbitration proceeding itself, Gilberg contends that AAA exceeded its authority by (1) treating Power Architects as if it were subject to Corporations Code section 310; (2) awarding treble damages and attorney fees under Penal Code section 496; and (3) permitting intimidation to undermine the integrity of the proceedings.  None of these contentions supplies a basis for reversal.

### 1.    *Corporations Code Section 310*

AAA ruled that Gilberg's self-dealing stock transactions violated Corporations Code section 310, subdivision (a)(1) through (2) because the transactions were not disclosed to and approved by the shareholders, the board, or a committee.  (This was in addition to AAA's ruling that the same transactions amounted to a breach of fiduciary duty and fraud.)  Gilberg contends that Power Architects was governed exclusively by the August Agreement and not the Corporations Code.  Gilberg's contention seems to rest on what he describes as "25 years of consistent shareholder governance" or a handful of provisions in the August Agreement he maintains implied an intention to manage Power Architects as a closed corporation exempt from Corporations Code section 310, subdivision (a)(1) through (2).  Nothing in Gilberg's argument makes AAA's application of the statute an exercise in excess of its authority.  Nor does AAA's award rely on its application of the statute, given its alternative findings of breach of fiduciary duty and fraud.

### 2.    *Penal Code Section 496*

Gilberg contends that AAA exceeded its authority by awarding treble damages and attorney fees for a violation of the August Agreement that AAA also found to violate Penal Code section 496.  We disagree.

Penal Code section 496, subdivision (a) prohibits a person from "buy[ing,] . . . receiv[ing]," or "conceal[ing], sell[ing], [or] withhold[ing] . . . from the owner" "any property that has been stolen or . . . obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained." Beyond potential criminal prosecution and sentencing, the statute creates a private right of action. "A principal in the actual theft of the property may be convicted pursuant to [that] section." (Pen. Code, § 496, subd. (a).) "Any person who has been injured by a violation of subdivision (a) . . . may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees." (*Id*., subd. (c).)

Relying on *Siry Investment, L.P. v. Farkhondehpour* (2022) 13 Cal.5th 333, AAA applied Penal Code section 496, subdivision (c) because "Gilberg acted knowingly and intentionally and with intent to deceive, abused his offices as CEO and a director of Power Architects, and violated the trust of his fellow officers, directors and shareholders in inflating and diverting payments to himself and his family members."[12] (See *Siry*, at p. 339 [applying Pen. Code, § 496, subd. (c) to the "fraudulent diversion of a partnership's cash distributions"].) AAA also found that Gilberg's conduct violated the August Agreement. The parties' dispute about the proper remedy for violations of the agreement is within the scope of the arbitration. (See *Heimlich*, *supra*, 7 Cal.5th at p. 358.) There being no express and unambiguous agreement to limit the scope of remedies, AAA was entitled to award any relief rationally related to its factual findings and contractual interpretation. (*Ibid*.)

---

[12] Gilberg maintains that because he and Mednik were responsible for the day-to-day management of the corporation, they both share equal responsibility for any improper distributions. Shared responsibility for management does not inexorably lead to shared responsibility for unilateral wrongdoing by a manager. We do not disturb AAA's factual finding that Gilberg alone was responsible for the wrongful distributions or that Gilberg alone should be held liable for his wrongdoing.

### 3.    *Intimidation*

Gilberg contends that Mednik and Kesel undermined the integrity of the proceedings through intimidation—by variously (1) falsely claiming that Gilberg and Kolchinsky tried to oust them; (2) pushing to dissolve the company as a condition of settlement, in breach of assurances that the company would not be dissolved without consent;[13] and (3) attempting to discredit Kolchinsky as a purported target of Russian gangsters.  Gilberg contends that AAA failed "to address these distortions," such that its award should be vacated under section 1286.2, subdivision (a)(5).

At the threshold, however, Gilberg misconstrues the statute as requiring express rulings on the significance of proffered evidence, rather than the bare hearing of material evidence.  And the first two issues relate to factual disputes AAA resolved against Gilberg, finding that (1) Gilberg and Kolchinsky did try to oust Mednik and Kesel; and (2) Mednik never dissolved the company.  We lack any basis to revisit these factual findings.

As for Russian gangsters, we reject Gilberg's contention that AAA was required to address this testimony.  Much like a court, an arbitration panel is not required to comment on every aspect of the evidence or the legal theories that parties elect to present, and Gilberg has shown neither that he asked AAA to do so nor that AAA's considering it unworthy of comment would exceed AAA's powers.

## H.    *Sanctions*

Power Architects moves for sanctions, arguing that Gilberg prosecuted a frivolous appeal and filed frivolous appellate motions.  We will deny the motion.

---

[13] We cannot identify any inconsistency between promising not to dissolve a company without consent and requesting consent to dissolve the same company as a term of settlement.  AAA refused to award Gilberg relief based on the "dissolution discussions," noting that Mednik and Kesel agreed in writing not to dissolve the company without Gilberg's consent but not commenting on the terms of any settlement offers.

"Whether to impose appellate sanctions is a matter within our discretion. [Citation.] Under section 907 and California Rules of Court, rule 8.276(a)(1), we may award sanctions when an appeal is frivolous and taken solely to cause delay. '[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]' [Citation.] 'The two standards are often used together, with one providing evidence of the other.' " (*Citizens for Amending Proposition L v. City of Pomona* (2018) 28 Cal.App.5th 1159, 1194.) The distinction between meritless and frivolous appeals is " 'vague,' " and "punishment should be used most sparingly to deter only the most egregious conduct" to avoid "chilling . . . the assertion of litigants' rights on appeal." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650–651.)

Here, although Gilberg has not prevailed, his subjective belief in the merit of his contentions is apparent. And while we hold Gilberg to the same standard as a represented litigant, we are not indifferent to the difficulty he faces in navigating the appellate process without counsel. (See *Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276, 1285.) We decline to impose sanctions on Gilberg based on either the relative merit of his unsuccessful appellate arguments or motion practice. The motion is denied.

### III. DISPOSITION

The judgment is affirmed.

_____

LIE, J.

WE CONCUR:

_____

GROVER, Acting P. J.

_____

WILSON, J.

*Gilberg v. Power Architects Corporation*
H052611